GREAT SOUTHERN LIFE INSURANCE COMPANY V.
GERTRUDE A. PEDDY.

No. 7885. Decided May 6, 1942.
Rehearing overruled June 10, 1942.
(162 S. W., 2d Series, 652.)

*Vinson, Elkins, Weems & Francis and Fred R. Switzer,* all of Houston, for plaintiff in error.

On the question of when the grace period began. Life & Casualty Ins. Co. v. Wheeler, 96 S. W. (2d) 753; Meadows v. Continental Assurance Co., 89 Fed. (2d) 256; Landrigan v. Missouri State Life Ins. Co., 245 S. W. 382; Hulen v. American Cent. Ins. Co., 45 S. W. (2d) 570; American Insurance Union v. Lowry, 62 Fed. (2d) 209.

The trial court should have instructed a verdict for defendant company and thereby determined that there was no waiver prohibiting the company from relying on a default in the payment of premiums and in insisting that the company was not liable for double indemnity, because there was no pleading that by reason of such course of dealing the insured was justified in believing that the insurer would insist on a forfeiture for failure to pay such premium. Postal Indemnity Co. v. Rutherford, 49 S. W. (2d) 1115; Southland Life Insurance Co. v. Hopkins 244 S. W. 989; Waybourne v. Plains Chevrolet, 125 S. W. (2d) 344.

*W. T. McNeill,* of Beaumont, for defendant in error.

The insured having died within the month of grace, the beneficiary was entitled to recover double indemnity. Mitchell v. Southern Union Life Ins. Co., 218 S. W. 586; Jefferson Standard Life Ins. Co. v. Baker, 260 S. W. 223; Kurth v. National Life and Accident Ins. Co., 79 S. W. (2d) 338.

Mr. Justice Sharp delivered the opinion of the Court.

This is an action by Gertrude A. Peddy, the beneficiary under two policies of insurance on the life of her husband, P. O.

Peddy, against the Great Southern Life Insurance Company, referred to as the insurance company, to recover double indemnity under supplemental contracts affixed to the policies of insurance. The face amounts of the policies for life insurance have been fully paid under an agreement that the acceptance of the payment thereof would not prejudice the right of the beneficiary to bring this suit. On trial to a jury, judgment was entered for the plaintiff, Mrs. Peddy, and this judgment was affirmed by the Court of Civil Appeals. 151 S. W. (2d) 346. This Court granted a writ of error.

This case involves three distinct questions: (1) Whether the "grace period" in a policy of life insurance begins to run from the date set forth in the contract, or whether the period begins to run from the anniversary of the date of the delivery of the policy and the payment of the first premium; (2) whether the beneficiary is entitled to collect double indemnity; and (3) whether there has been a waiver by the insurance company of the requirement of punctual payment of the premiums.

The facts regarding the first question are these: The two policies, issued on the same application, contain substantially similar provisions. The policies are dated November 25, 1933, and were delivered on December 10, 1933, at which time the first monthly premiums were paid. The last monthly premiums paid were those which, according to the insurance company's notice, were due on March 25, 1940. This paid up the insurance to April 25, 1940; and considering that date as a basis, the grace period expired on May 26, 1940, and the accidental death on June 4, 1940, occurred outside the grace period. On the other hand, if the 10th of the month is considered as the basis from which to calculate the grace period, the accidental death on June 4th occurred well within the grace period.

The application contained the following paragraph:

"That the insurance hereby applied for shall not take effect until a written or printed policy shall have been actually delivered to and accepted by me, while I am in good health, and the first premium shall have been actually paid, during my life and while I am in good health."

Each of the policies provided that:

"This contract is made in consideration of the payment of

the first annual premium (or installment thereof) of (here is stipulated the amount of the annual premium) *and the payment of the like annual premium on the twenty-fifth day of November in every year during the continuance of this contract. until the death of the insured."* (Italics ours.)

The insured, by agreement with the insurance company, paid his premiums monthly on notices from the insurance company to the effect that the premiums were due on the 25th day of the month.

A life insurance policy, like the one under consideration, which provides that it shall not take effect until it has been actually delivered to and accepted by the insured, while he is in good health, and the first premium is actually paid, and which further provides that "the payment of a like annual premium on the 25th day of November in every year during the continuance of this contract until the death of the insured," definitely fixes the due dates of such premiums as the dates specified in the policy, regardless of the date of the delivery of the policy. The language used in the policy clearly designates November 25th as the due date of the annual premium. This date gave the insured the benefit of the premium rate, the cash loan values, and the paid-up insurance values. In this instance the insured, with the consent of the insurer, paid his premiums monthly, instead of annually, and accepted the 25th day of each month as the due dates of his premiums; and for many years he paid his premiums accordingly. The monthly premiums were due on the 25th day of each month, and if the insured did not make payment on or before that date, and if such premiums were not paid within thirty-one days thereafter, such policies lapsed, unless the insurance company waived the payment of such premiums.

■ The great weight of current decisions sustains the rule that when a policy specifically provides for the payment of premiums, and expressly specifies the date from which the premium period is to be computed, and makes that date the day on which recurring premiums are due and payable, such date will control, irrespective of the date on which the policy is delivered. Kurth v. National Life & Accident Ins. Co., Inc. (Civ. App.), 79 S. W. (2d) 338 (writ refused) ; Rolerson v. Standard Life Ins. Co. (Civ. App.), 244 S. W. 845; Prange v. International Life Ins. Co., 329 Mo. 651, 46 S. W. (2d) 523, 80 A. L. R. 950; Timmer v. New York Life Ins. Co., 270 N. W. 421, 111 A. L. R. 1412, Annotations 111 A. L. R. 1420; Wilkinson v. Common-

wealth Life Ins. Co., 176 Ky. 833, 197 S. W. 557, 6 A. L. R. 769 and annotations of decisions; Cantey v. Philadelphia Life Ins. Co., 166 S. C. 181, 164 S. E. 609; Weller v. Manufacturers' Life Ins. Co., 256 Mich. 532, 240 N. W. 34; Methvin v. Fidelity Mutual Life Assn., 129 Cal. 251, 61 Pac. 1112; McCampbell v. New York Life Ins. Co. (C. C. A.), 288 Fed. 465, writ of certiorari denied 262 U. S. 759, 43 Sup. Ct. 705, 67 L. Ed. 1219; Ratliff et al v. Kentucky Home Mutual Life Ins. Co. (C. C. A.), 87 Fed. (2d) 965.

■ Mrs. Peddy, in addition to the payment made to her by the insurance company for the face amount of the policies of life insurance, claims an additional amount due as double indemnity. This claim is based on the ground that the supplemental contracts authorized such recovery in the event of death of the insured from accident.

It was stipulated that the insured died on June 4, 1940, as a result of injuries received in an automobile accident, which occurred on June 3, 1940. It was further agreed that proper notice of loss, notice of death, and proof of death were made.

The supplemental contracts providing for double indemnity provide:

"In event of death from accident, the company agrees to increase the amount payable hereunder to (amount stated) upon due proof that the death of the insured *occurs during the premium paying period, while this policy is in full force and effect, and before any benefit or value under any of the provisions in this policy other than loans shall have been claimed and allowed, or granted automatically* * * *." (Italics ours.)

"This supplemental contract is issued in consideration of the payment of an annual premium of (amount stated) payable at the same time and under the same conditions as the premiums stated on the first page of the policy, *and shall automatically terminate at the end of the premium paying period of the policy* * * ." (Italics ours.)

"Failure to pay any premium when due under said policy or this Supplemental Contract shall automatically terminate this contract and all rights hereunder."

The policies of life insurance had the following provisions

for extended insurance in the event of default in the payment of premiums:

"After premiums shall have been paid for three full years, the insured may elect any one of the following options, within one month from the date of default in the payment of any premium or premium note:

    \*      \*      \*      \*      \*      \*

"(c) To accept insurance for the face amount of this policy to continue in force from such due date for such term as said Cash Surrender Value, as above defined, will purchase as a net single premium at the age of the insured at such due date, computed according to the American Experience Table of Mortality, with interest \* \* \*."

    \*      \*      \*      \*      \*      \*

"If the insured shall not, within one month from the date of default in the payment of any premium or premium note, elect one of the foregoing options, *then the policy will automatically be continued in force as provided in Section* (c)." (Italics ours.)

Under the belief that the life insurance was continued in force under Section (c) above, there having been no election made, the insurance company paid the amounts of the regular life policies. But it contends that the insured did not die during any premium paying period while the policies were in full force and effect, as required by the supplemental contracts. On the other hand, the beneficiary contends that the grace period should be measured from the anniversary date of the delivery of the policy and the payment of the first premium.

It is the contention of the insurance company that, even if the insured died during the grace period, as claimed by the beneficiary, the beneficiary cannot recover because of the requirement of the supplemental contracts that an accident must occur *before* any benefit of *extended insurance* under the policies begins,— that is, the policies provided that, in the event of default and failure to elect one of three alternatives, the policies would be carried on extended insurance under Section (c) set out above; and that there can be no recovery of double indemnity while the policies are being carried on extended insurance.

The supplemental contract clearly provide that such insur-

ance company will pay a certain sum in the event of death from accident, upon proof that the death of the *"insured occurs during the premium paying period, while this policy is in full force and effect, and before any benefit or value under any of the provisions, in this policy other than loans shall have been claimed and allowed, or granted automatically * * *."* The policies further provide that the insured may, after the premiums have been paid for three full years, elect any one of three options within one month from the date of default in the payment of any premium, as described in the policies. The policies further provide that, "If the insured shall not, within one month from the default in the payment of any premium or premium note, elect one of the foregoing options, then the policy will automatically be continued in force as provided in Section (c)."

If the insured failed to pay his premium in due time as required by the policies, then the beneficiary is not entitled to collect the double indemnity. This claim is therefore available only while there has been no default in the payment of the premiums. It appears from the language used therein that the amounts named are payable as insurance if the premiums therein specified are paid, and that the insurance will be in effect during the time for which the premiums are paid. These rights shall "automatically terminate at the end of the premium paying period of the policy."

A life insurance policy substantially similar to the ones here under consideration was involved in the case of Great Southern Life Ins. Co. v. Cunningham, 128 Texas 196, 97 S. W. (2d) 692. Judge Smedley wrote the opinion of this Court in that case. He reviewed the policy involved there in connection with the statutes applicable thereto. In the course of the opinion it was said:

"The statutes of this state do not require policies of life insurance to make provision for extended term insurance after default in payment of premiums. Article 4732 of the Revised Civil Statutes sets out eleven provisions that substantially must be contained in all policies of life insurance. Only the seventh, eighth, and ninth of these could be construed as relating to extended term insurance."

In the opinion such provisions were copied, but same will not be copied here. In conclusion, it was held:

"That by the terms of the policy insurance was automatically extended for the sum of $1,000; that, according to the terms of the policy, there is no liability for double indemnity, the insured having died after default in payment of premium and while the policy was carried on extended insurance; and that the provisions of the policy which deny the benefit of double indemnity when the policy is automatically extended are not within the prohibition of subdivision 3 of article 4733, because the face of the policy does not, either by its terms or by the operation of any statute, insure the life of the insured for $2,000, in the event of accidental death, for a term or period extending beyond that for which premiums are paid."

We hold in this case that extended insurance began to run under Section (c), and upon the failure to pay the premium due on April 25, 1940, the policy was then being carried on extended insurance, and therefore fell within the restrictions of the double indemnity contract; and unless the insurance company has waived its right to deny the claim, Mrs. Peddy is not entitled to recover the double indemnity specified in the policies.

■ We shall now consider the question of waiver. The facts regarding this issue are substantially as follows: During the six and one-half years that these policies were in force, there were seventy-seven monthly premiums paid. Plaintiff introduced eighteen of the official receipts, with dates scattered throughout the life of the policies, and which bear dates subsequent to the expiration of the grace period. All subsequent premiums prior to March 25, 1940, had been paid; and the two policies were in full force and effect as to all provisions of the supplemental contracts on that date. The last monthly payment made by the insured was on the notice advising him that a monthly premium would be due on March 25, 1940. The official receipt for the last payment is dated April 29, 1940. On June 1, 1940, the insured remitted to the insurance company, by check, the amount of the monthly premiums which, on notices of the insurance company to him, were due on April 25 and May 25, 1940. The check was not accepted by the insurance company. It wrote the following to the insured, dated June 3, 1940:

"Thank you for the payment sent us for this policy. Unfortunately, your policy has now lapsed, as the grace period for the premium shown above has expired. If, however, you will return the enclosed health certificate fully completed, we shall

be glad to consider restoration of the policy to the premium paying basis."

The jury found that the insured never received the letter.

Of the eighteen receipts introduced, two were dated nine days after the grace period, four were dated five days thereafter, one was dated four days thereafter, and six were dated three days thereafter. In April, 1935, and again in March, 1938, the insurance company had refused to accept premiums paid after the expiration of the grace period, and had insisted on reinstatement of the policies by application accompanied by a health certificate. And the insurance company refused to accept the last check sent by the insured on June 1, 1940. The above letter was written him on June 3, 1940, the day of the accident, and a form of application for reinstatement was enclosed. The agents of the insurance company testified that they had no knowledge of the accident when the letter was sent.

The insurance company insists that the above-mentioned payments claimed to have been paid after the grace period had expired were not received after the expiration of the grace period, giving the following facts in explanation: The insurance company accepted checks which were postmarked the last day of the grace period. One or more days intervened between the mailing of a check and its receipt by the insurance company, depending on whether it arrived in Houston, the insurance company's home office, on a Saturday afternoon, on a Sunday, or on a holiday. Some of the checks sent by insured were mailed from Beaumont, and the mail from Beaumont arrived in Houston late in the morning. Therefore, often, the mail arriving late in the day at the office was not handled until the next day, due to the great volume of business done. Then, because the insurance company desired to have its receipts bear the same dates as its bank deposits, and because the banks closed at two p. m., the insurance company dated the receipts one day later than the days on which the checks were handled, so that the whole process might be finished in time to get to the bank the next day. So all those receipts which were dated three days after the grace period were not out of the ordinary,—allowing one day for mailing, one day for receipt and handling, and one day for banking. Those receipts which were dated four days after the grace period were so dated because two days had been required after the receipt

of the checks, due to a week end. Those dated five days later could be explained by the intervention of a holiday.

But there was no direct evidence that the insured knew of the customs of the insurance company. Nor is there evidence of any reliance by the insured on the alleged acceptance of late premium payments. The evidence on both questions is circumstantial. An agent of the insurance company testified that, in spite of the above custom on the part of the insurance company, it was possible for some of the payments, which bore a receipt date after the expiration of the grace period, to have been made actually after the grace period. A cancelled check dated October 28, 1939, for the premium due on September 25, 1939, (three days after the grace period) was introduced in evidence. The insurance company could only explain its acceptance by stating that it was a mistake.

Under the authorities the plaintiff failed to establish such a case of custom or waiver as would warrant its submission to the jury. She was unable to prove that the payments, except on one or two occasions, were actually made after the expiration of the grace period. The rest of the alleged late payments were sought to be established by the dates on the official receipts. Under the above undisputed explanation of the insurance company as to its procedure in handling payments, those receipts which were dated three or four days after the grace period do not necessarily prove that the payments were actually made and received after the expiration of the grace period. Nor is there a scintilla of evidence of any agreement, express or implied, on the part of the insurance company to accept late payment. The undisputed evidence is that there was no custom on the part of the insurance company to accept payment of premiums which were postmarked after the last day of the grace period.

The controlling facts are undisputed. The insured knew that the premiums were due on the 25th day of each month. He also knew that the insurance company had exercised its right to declare a forfeiture when the premiums were not timely paid, and had demanded a reinstatement of the policies. He realized that when he failed to pay the premiums when they became due that such a failure gave the insurance company the right to declare a forfeiture of the policies. When all of the testimony is considered most favorably to the insured, it fails to raise an issue of waiver by the insurance company.

To hold otherwise, under the facts of this case, would force insurance companies to deal harshly with policyholders by declaring a forfeiture upon any late payment of premium, for fear that by not doing so it would be held they had thereby waived their rights to thereafter insist upon the terms of the contract with reference to the date of payment.

A similar case was before this Court in Texas Mutual Life Ins. Assn. v. Tolbert (Com. App., opinion adopted), 116 S. W. (2d) 1060, readopted, per curiam, 134 Texas 419, 136 S. W. (2d) 584. In that case there was evidence that payments had been made and accepted after the grace period. On that point it was said:

"It is next contended by plaintiff that the right to claim forfeiture by reason of the failure to pay the assessment within the ten day period was waived by the Association; and the Court of Civil Appeals so held. The basis of such contention is that the Association had on several previous occasions credited assessments as paid when the remittance to pay checks had not reached the office of the Association until after the expiration of the grace period, and on perhaps two occasions the checks had been returned unpaid, but the Association had accepted payment made in some other manner after the grace period. *The situation here manifestly shows no intention to waive, but on the contrary shows that the ipso facto forfeiture provided for was fully recognized,* and also shows an attempt to strictly and literally follow the plain provisions of the certificate and by-laws." (Italics ours.)

In that case this Court reversed and rendered the case in favor of the insurance company.

In the case of Southland Life Ins. Co. v. Hopkins, (Com. App.), 244 S. W. 989, it was stated that, "To constitute waiver there must be some statement or conduct by the insurer which would reasonably warrant the conclusion that it did not intend to exercise some right or advantage which it had."

The Supreme Court of the United States, in a similar case, Thompson v. Knickerbocker Life Ins. Co., 104 U. S. 252, 26 L. Ed. 765, stated:

"The last replication sets up and declares that it was the usage and custom of the defendants, * * * not to demand

punctual payment thereof at the day, but to give days of grace, to wit: for thirty days thereafter, and they had repeatedly so done with Thompson and others, which led Thompson to rely on such leniency in this case. This was a mere matter of voluntary indulgence on the part of the Company, or, as the plaintiff herself calls it, an act of 'leniency.' It cannot be justly construed as a permanent waiver of the clause of forfeiture, or as implying any agreement to waive it, or to continue the same indulgence for the time to come. As long as the assured continued in good health, it is not suprising, and should not be drawn to the Company's prejudice, that they were willing to accept the premium after maturity, and waive the forfeiture which they might have insisted upon. This was for the mutual benefit of themselves and the assured, at the time, and in each instance in which it happened it had respect only to that particular instance, without involving any waiver of the terms of the contract in reference to their future conduct. The assured had no right, without some agreement to that effect, to rest on such voluntary indulgence shown on one occasion, or on a number of occasions, as a ground for claiming it on all occasions. If it were otherwise, an insurance company could never waive a forfeiture on occasion of a particular lapse without endangering its right to enforce it on occasion of a subsequent lapse. Such a consequence would be injurious to them and injurious to the public."

Further quotation from authorities is unnecessary. Other cases so holding are: Thompson v. Fidelity Mutual Life Ins. Co., 116 Tenn. 557, 92 S. W. 1098, 6 L. R. A. N. S. 1039, 115 Am. St. 823; Crossman v. Massachusetts Benefit Assn., 143 Mass. 435, 9 N. E. 753; and Moss v. Aetna Life Ins. Co., 73 Fed. (2d) 339 (C. C. A.).

We therefore hold that the beneficiary's right to double indemnity terminated because of the failure of the insured to make premium payments within the time specified in the contracts; and that, as a matter of law, there was no custom or waiver on the part of the insurance company to estop it from asserting its rights under the policies.

The judgments of the trial court and of the Court of Civil Appeals are reversed, and judgment is here rendered for the plaintiff in error.

Opinion delivered May 6, 1942.

Rehearing overruled June 10, 1942.