**HENNING v. JEFFERSON STANDARD LIFE INS. CO.**

No. 10135.

Circuit Court of Appeals, Fifth Circuit.

June 22, 1942.

Rehearing Denied Aug. 13, 1942.

A. D. Dyess, of Houston, Tex., for appellant.

Albert P. Jones, of Houston, Tex., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

In order to enable his father to secure a loan from the Jefferson Standard Life Insurance Company, Harris Henning made application to the company for a policy of life insurance. A check in payment of the first semi-annual premium on the policy was delivered to the insurer on September 30, 1939, and in due course the policy was issued dated October 2, 1939.

The loan was not completed until October 25, 1939, on which date the insurer cashed the check covering the semi-annual premium, and delivered the policy to the insured. Prior to April 2, 1940, the insured was notified that his semi-annual premium would become due on that date, but no premium was paid, and no tender of premium was made until May 15, 1940. The company then declined the tender, and sent forms to the insured upon which he might apply for reinstatement of the insurance. Henning did not apply for reinstatement; and on June 2, 1940, he sustained injuries from which he died on June 4, 1940.

Eli Henning, as beneficiary named in the policy, filed this suit to recover the full value of the insurance, and the court below dismissed the action on the ground that the policy had lapsed for non-payment of premium. On appeal from that judgment appellant contends in substance that the true effective date of the policy was October 25, 1939, rather than October 2, 1939, since the parties did not intend to enter into the contract of insurance unless the loan was completed, and since the check for the premium was not cashed and the policy was not delivered until that date. He further contends that, due to certain ambiguities therein, the policy as written fixed April 25, 1940, as the due date of the

second semi-annual premium; if not, that the contract should be reformed so as to fix April 25, 1940, as such due date; and that the tender of the premium on May 25, 1940, being within the thirty-day grace period, was effective to continue the policy in force until the death of the insured.

The policy, admittedly a Texas contract, provided that the insurance was granted in consideration of the premium paid, and of the payment of a like sum on each anniversary of the date of the policy. In lieu of annual premiums, the contract authorized semi-annual or quarterly payments of premiums at the option of the insured, with the proviso that any instalment payment should not continue the policy in force beyond the grace period allowed for payment of the next instalment. The anniversary date of the policy was the second day in October, and all loan, cash surrender, and extended insurance values were calculated from that date.

■ Under the law of Texas, when a policy expressly specifies the date from which the premium period is to be computed, and fixes the date for the payment of recurring premiums, such date is controlling as to premium payments irrespective of the date on which the policy is delivered.[1] If the premium had been paid annually, the plain provisions of the policy would have required the payment of the second annual premium before the expiration of the grace period following October 2, 1940.

■ There being nothing in the contract to indicate otherwise, and annual premiums being due and payable in advance on the second day in October of each year, it would be most unreasonable to construe the contract to fix any other dates for the instalment payments than those reached by a chronological computation forward from the date the annual premium was due.[2] We think the contract, as written, required semi-annual payments of premiums to be made on the second day of Octo-

ber and April of each year, and that the tender of the premium on May 15, 1940, was not within the time prescribed to continue the policy in force. Cf. Mutual Life Ins. Co. v. Hurni Co., 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102.

The question whether appellant was entitled to a reformation of the contract also must be decided against him. Appellant does not contend that the insurer was guilty of any fraud or misrepresentation in connection with the contract, but he asks for reformation on the ground that the parties understood and intended the insurance to become effective only from the date of the completion of the loan, at which time the policy was delivered. He says the contract failed to give utterance to this understanding and intention through mistake.

■ Where the sole ground for reformation is mistake, the mistake must be mutual in that all parties must have agreed to the same terms and must mistakenly have assumed that those terms were properly expressed in the instrument.[3] Although the record discloses that the parties only intended to enter into a valid and binding contract of insurance because the loan was to be made, there is no evidence in the record directly or impliedly indicating the existence of any mutual agreement that the policy date should coincide with the date the loan was made. On the contrary, the insurer evidenced a contrary understanding by giving controlling effect to the date of October 2, 1939, when it gave repeated notice of the due date of the second semi-annual payment; and the insured, though advised time and again that the insurer so construed the contract, did nothing to indicate that he had a different understanding or to have the alleged mutual mistake corrected.

We think the proof fails to show any such mutual mistake in dating the policy as would authorize a court of equity to reform the contract. The judgment appealed from is affirmed.

---

[1] New York Life Ins. Co. v. Silverstein, 8 Cir., 53 F.2d 986; Jones v. Jefferson Standard Life Ins. Co., 5 Cir., 79 F.2d 640; Meadows v. Continental Assurance Co., 5 Cir., 89 F.2d 256; Great Southern Life Ins. Co. v. Peddy, Tex.Sup., May 6, 1942, 162 S.W.2d 652, and authorities there cited.

[2] Cf. Great Southern Life Ins. Co. v. Peddy, supra.

[3] Kelley v. Ward, 94 Tex. 289, 60 S.W. 311; San Antonio Nat. Bank v. McLane, 96 Tex. 48, 70 S.W. 201; McClintock on Equity, Sec. 92; Pomeroy's Equity Jurisprudence, 5th Edition, Sec. 870.