**VELA v. SOUTHLAND LIFE INS. CO.**
**No. 13854.**

Court of Civil Appeals of Texas. Dallas.
April 23, 1948.

Motion to Strike Statement of Facts Denied
April 23, 1948.

Rehearing Denied June 4, 1948.

212

Weatherly & Weatherly, of Falfurrias, for appellant.

R. L. Dillard, Jr., of Dallas, for appellee.

LOONEY, Justice.

Agueda G. Vela, appellant, sued Southland Life Insurance Company, the appellee, on its life policy for $2,500 insuring Aurelio Vela, payable on his death to his widow, the appellant herein. Appellee's defenses are these: That the policy in suit was never delivered to or accepted by the insured; but that if delivered or accepted, it had lapsed prior to his death for failure to pay premiums due; appellee also denied liability on the ground that the insured took his own life.

The case was submitted to a jury on special issues, in answer to which they found that the policy in suit was placed in the possession of Agueda G. Vela (insured's agent) by Joe Kubena (appellee's local agent) on October 19, 1942, "not for inspection only"; found that the policy remained in such possession for seven days; further, that the death of Aurelio Vela was not the result of self-destruction; that a reasonable fee for appellant's attorneys for the preparation and trial of the cause in the district court was $1,000 and that a reasonable attorney's fee for attention to the case on appeal would be $350.

Based on the findings of the jury and facts otherwise appearing in the record, appellant moved for judgment for $3,800, being amount of the face of the policy with 12 percent statutory damages and $1,000 attorney's fees, with 6 percent interest thereon from December 12, 1942, costs of suit and $350 additional attorney's fee in the event the case should be appealed; and the appellee filed a motion for judgment non obstante veredicto. These motions came on for hearing January 20, 1947. After due consideration the court overruled appellant's motion for judgment but sustained the motion of appellee for judgment non obstante veredicto, and thereupon rendered judgment that appellant take nothing by her suit and pay all costs; to which she excepted, gave notice of and perfected this appeal.

The salient facts involved, in our opinion, are these: On September 15, 1942 the insured applied to appellee for a life policy of $5,000 which was not issued, but in lieu appellee issued the policy in suit for $2,500, providing for a higher premium, payable quarterly. This policy was forwarded by appellee to Joe Kubena (its local agent) for delivery, to whom, according to the testimony of Mr. Candler (appellee's witness), was "left the entire matter of the delivery of this policy * * *." On October 19, 1942 Kubena delivered the policy to Mrs. Vela, or left the same in her possession—"not for inspection only," in the language of the jury finding; and at that time Kubena collected $5.00 on the premium and issued a receipt showing that it was paid on the policy. Seven days later, on October 26, Kubena returned to collect balance of the premium, at which time Mrs. Vela indicated that she and her husband were satisfied with the policy but requested Kubena to have it changed so as to provide for the payment of premiums monthly rather than quarterly; and in this connection she testified:

"Q. And did you give him the policy? A. Si, Senor, yes.

"Q. What—what did he say he was going to do with the policy, if anything? A. He told me that he was going to return it to the company—so you see—Senor?

"Q. Did he say why he was returning it to the company, Mrs. Vela? A. Because he was arranging differently—the monthly payments—for the premiums—Do you understand me?

"Q. And now, Mrs. Vela, what did you tell him with regard to giving him the policy at that time—what did you say about the monthly payments—the monthly premium? A. I told him to bring me another policy. I told him that I had decided—that I had decided on a similar policy but which I could pay by the month, because it seemed to me to be a little less money—Do you see?" (S.F., p. 117, lines 2–18.)

In response to the request of Mrs. Vela to change from quarterly to monthly premium payments, Kubena (appellee's agent) determined from his tables that the monthly premium would be $7.44, so he collected $2.44 in addition to the $5 previously collected and issued a receipt showing that that amount was paid on the policy in question. Kubena then forwarded the policy and postal money order for $7.44, with his communication to appellee requesting change to a monthly premium payment. This communication was received by appellee at its home office November 27, 1942, and the $7.44 was placed in what appellee refers to as its "Suspense Account." In answer to the question whether on occasions he had found it necessary to make rearrangements in regard to payment of premiums—that is changes from annual to semi-annual, quarterly, monthly, or vice versa, answered: "Yes, sir. They may (make) changes lots of times" (S.F., p. 10, line 18). Asked as to his experience as to whether requests for such changes were made, answered: "Yes, sir. And I have to write them a letter and explain why and I have to take the policy and mail it to the company with the request to make the change." (S.F., p. 11, lines 17–19.) And in this connection the witness also testified:

"Q. Now, you sent that back to the company in agreement with Mrs. Vela to have it changed to monthly payment plan, did you not? A. Yes, sir.

"Q. And you told her what you were doing? That you were sending it back to have it changed to a monthly premium payment plan? A. Yes, sir.

"Q. And she agreed to that, did she not? A. Yes, sir." (S.F. p. 32.)

Later, Mrs. Vela asked Kubena about the policy; she said: "He told me that he had written to the company and that he was only waiting for them to send it to him in order that he could deliver it to me." (S.F., p. 118.) Appellee never did refuse to make the change requested in regard to payment of premiums; on the contrary, in answer to an inquiry by Vela in regard to the policy, recognized its continued existence as shown by its letter of December 4, 1942, hereinafter quoted in full.

On December 12, 1942, Vela died, and on December 14 appellant wrote appellee as follows: "Falfurrias, Texas, December 14, 1942. Dear Sirs: This is to notify you that my husband Aurelio Vela policy No. 260555 died on Dec. 12, 1942. I wired Mr. Kubena and as yet he hadn't sent me the policy, but I don't know if he is in Robstown or not so thought it best to notify you also. Will you please take care of this matter? Thanking you, I remain, Yours truly, (Signed) Mrs. Vela." To which, on December 17, the appellee replied as folows: "Dear Mrs. Vela: We duly received your letter of December 14th notifying us of the death of your husband, Aurelio Vela. While it is true that policy #260555 was issued, it was not for the same amount for which the application was made and therefore constituted a counter offer on the part of the company which was never accepted by the applicant. The policy was never delivered and was not in force for any amount on the life of your husband at the time of his death. The company has no liability on account of any application which may have been made by him. Yours very truly, P. V. Montgomery, Vice President and Actuary."

In 1944, appellant employed counsel and filed suit on the policy in the district court of Brooks County, Texas; expenses were incurred in preparing the case for trial and it was only after these happenings that appellee denied liability on any ground other than as set forth in its letter to Mrs. Vela, December 17, 1942. The record discloses that the appellant took a nonsuit in the action filed in Brooks County, refiled on same cause of action in the court below and, by agreement of parties, the depositions taken in the first suit and other documentary evidence have been withdrawn and refiled as part of the record in this cause.

The first point of error urged by the appellant is that appellee was estopped to defend on the ground that the policy sued upon lapsed for failure to pay premiums due prior to insured's death. In answer to this point appellee contends that "In the case at bar appellant did not plead the estoppel referred to as the first point in her brief and she failed to prove it. Furthermore, she requested no special issues on either estoppel, waiver, or ratification. This in itself

will defeat these asserted grounds for recovery. (17 Tex.Jur., p. 146, et seq.)" We think appellee is in error in asserting that appellant failed to plead estoppel. We find in subdivision 4 of her supplemental petition a pleading that we think is an elaborate plea of estoppel (See pp. 34, 36, Transcript.)

As heretofore shown, Vela died December 12, 1942, and on the 14th of December appellant wrote appellee announcing the death of her husband, concluding as follows: "Will you please take care of this matter?" The effect of the request, in our opinion, was for a settlement under the policy, and it seems that appellee gave to it such interpretation, for, answering on December 17, denied liability on the ground that the policy "was never accepted * * * was never delivered and was not in force for any amount on the life of your husband at the time of his death." In that status the matter rested until during the year 1944 when appellant employed attorneys, filed suit on the policy, and incurred incidental expenses; and it was later that appellee urged two additional defenses, that is, lapse of the policy and suicide of the insured. We fail to find in appellee's brief any contention that the defense of suicide was sustained. That defense seems to have been abandoned.

■ Under a well established rule that prevails in this State, we are of opinion that by reason of the facts heretofore revealed, appellee is estopped to now contend that the policy lapsed for failure to pay premiums prior to insured's death. The rule, in our opinion, was announced with citation of supporting authorities in National Aid Life Ass'n v. Murphy, Tex.Civ.App., 78 S. W.2d 223, app. dismissed, as follows: "Insurer held estopped to rely upon alleged breach of health provision of benefit certificate, where, with full knowledge of all material facts, insurer denied liability upon grounds other than breach of good health provision and failed to rely upon provision until long after suit was filed." (Syl. 4.) Also see the later case of Woodmen, etc., Ins. Society v. Armstrong, Tex.Civ.App., 170 S.W.2d 526, app. refused, want of merit; and 45 C.J.S., Insurance, § 707, page 677.

In the alternative, appellant also contends that as a matter of fact the policy had not lapsed for failure to pay premiums at the time of Vela's death. This matter will be discussed later; for the present we will take up appellant's answer to appellee's contention that the policy was neither delivered to nor accepted by the insured.

The material facts bearing upon the delivery and acceptance of the policy are substantially these: As before shown, Vela applied to appellee for a $5,000 life policy which was not issued, but in lieu appellee issued the policy in suit for $2,500 which required payment of a higher premium quarterly. After issuing the $2,500 policy, appellee forwarded same to Joe H. Kubena, its local agent, for delivery to Vela. On October 19, 1942, Kubena left the policy in the possession of Mrs. Vela, in the language of the jury—"not for inspection only." The inescapable inference, in view of the respective contentions of the parties, is that the policy was not only left for inspection, but for acceptance as well. This idea is in harmony with the conduct of Kubena, as he collected $5 on the first quarterly premium and returned seven days later (October 26) to collect balance of the premium. At this time he was informed by Mrs. Vela, who seemed throughout to act as agent for her husband, that they desired a change in payment of premiums from quarterly to monthly. Her testimony on this point has been previously set out. We think it shows that the Velas accepted the policy and simply desired a change in premium payments. Kubena's testimony heretofore set out indicates that similar requests were frequent and appear to have been granted as a matter of course. This idea is consistent with his conduct at the time, as he made a calculation, ascertained that the monthly premiums would be $7.44, collected $2.44 in addition to the $5 previously collected, and in each instance gave a receipt showing the payments were made on the policy. The record discloses that Kubena obtained a postal money order for $7.44, forwarded same to appellee at its home office in Dallas, together with the policy and his accompanying message stating the change desired. This communication was received at the home office of appellee November 27, 1942. On November 30 appellee wrote its local agent in regard to the matter, giving him,

certain instructions, but it is nowhere shown that the contents of this letter were ever brought to the attention of the Velas, or that Kubena ever contacted or conferred with them again prior to the death of insured. The record also discloses that on December 4, appellee through its underwriting department wrote Vela in answer to his inquiry in regard to the policy. This was eight days after the remittance and policy, with request for change, were received. This letter, in our opinion, contains some significant language; it reads: "Mr. Aurelio Vela, Avenue A, Robstown, Texas. Policy 260555—Your Life. Dear Mr. Vela: We are in receipt of your inquiry of recent date in regard to your above numbered policy. Under date of November 30 we wrote our representative, Mr. Joe H. Kubena, requesting that he discuss with you a proposed change. If Mr. Kubena has not yet seen you with regard to this matter, I am sure that he will within the next few days. Yours very truly, W. L. Candler, Underwriting Department." However, as before stated, Kubena never did contact or discuss with the Velas the matter referred to in this letter, although on December 4th appellee recognized that the policy was continuing and valid, and had not at that time or at any time thereafter declined to make the change in the premium payments as requested.

Although Kubena did not contact the Velas or discuss with them any matter contained in the letter of November 30, appellee seems to base an argument adverse to the appellant upon the contents of this letter, as though the matters stated therein were material for our consideration (pp. 9, 10, brief). We do not think so, or that appellant's case should in any way be prejudiced by reason of the contents of a letter of which she was ignorant.

In view of these facts we are of opinion that the policy in suit was delivered and accepted on October 19, 1942 and that its provision for the payment of premiums quarterly by construction was changed so as to provide for monthly payments; as equity will consider that as done which should have been done.

Appellee combats the contentions of appellant and insists that recovery on the policy is precluded by reason of the fact that the written portion of the insurance contract provides for payment of a quarterly premium of $22.30, payable in advance on the 18th day of September, 1942; also provides the effective date of the policy as being September 18, 1942, and further provides "that no agent is authorized to modify this policy or to extend the time of payment of premiums and only the president, a vice president, secretary, actuary or assistant secretary, has the power on behalf of the company to modify this, or any contract of insurance, and then only in writing at the Home Office of the company and the company shall not be bound by any promise or representation heretofore or hereafter made by any other person."

The record discloses that Mr. Candler handled most of appellee's home office correspondence in regard to the policy in suit. He was appellee's assistant secretary and supervisor of the issuance of policies; supervised the issuance of the policy in suit and mailed same to appellee's local agent Kubena for delivery. As heretofore shown, Kubena had full authority to make delivery of the policy. Mr. Candler received the remittance of $7.44, one month's premium, mailed to the home office by Kubena together with the policy and his communication stating the request for change in payment of premiums. After receiving this request on November 27, Candler wrote Kubena, November 30, a letter of instructions in regard to the policy; and also, in answer to Vela's request for information in regard to the policy, wrote the letter of December 4 which has heretofore been set out. While Candler was not one of the officers specified in the policy, it is obvious that appellee relied on his letters and transactions and we do not think appellee should be permitted to rely upon Candler's acts if considered favorable and repudiate them if considered unfavorable. We therefore conclude that the letter of December 4, 1942, adressed to Mr. Vela in regard to the policy, constituted an acknowledgment on behalf of appellee of the policy's validity and constituted an effectual ratification of Kubena's

transactions in regard to the delivery of the policy and the change in the method of paying premiums; or, to say the least, was a waiver of Kubena's lack of authority, if in fact such authority was really lacking.

The policy involved in Equitable Life Assurance Society of United States v. Ellis, 105 Tex. 526, 147 S.W. 1152, 152 S.W. 625, provided among other things that it could not be varied except in writing by one of certain executive officers of the Society at its home office. The Supreme Court held that the Society through a letter written by one Brophy at its home office, not one of the executive officers named, had recognized the continued existence of the policy, notwithstanding under its terms it was forfeited. The court used this pertinent language [105 Tex. 526, 147 S.W. 1158]: "The limitation in the policy that it could not be varied except by certain officials other than Brophy was not conclusive." Disposing of a similar question in Home Ins. Co. of New York v. Roberts, 129 Tex. 178, 100 S.W.2d 91–93, the Supreme Court said: "It is now well settled in Texas that a provision in an insurance policy that no condition or stipulation shall be waived except by a written indorsement attached to the policy is ineffectual to prevent a parol waiver of such provisions and conditions by an authorized agent acting within the scope of his authority." (Several cases are cited) "These cases are based on the proposition that an insurance corporation cannot thus limit its power subsequently to contract in any lawful manner by and through its authorized agents acting within the scope of their authority. For the same reason, a stipulation in the policy that only certain officers and agents named therein shall have the power to waive the conditions of the policy does not preclude an authorized agent, other than the officials named, acting within the scope of his authority, from effecting such a waiver." A number of other pertinent authorities could also be cited, but we do not deem it necessary.

We are of opinion that appellee waived any lack of authority in Kubena by receiving and holding the premium paid by insured and remitted by Kubena, in view of its letter of December 4, 1942 in which appellee treated the policy as valid and in full force and effect. As heretofore shown, appellee's witness, Mr. Candler, testified that the entire matter of the delivery of the policy was left up to Mr. Kubena; but if there existed a lack of authority, we are of opinion it was clearly waived by the facts heretofore stated.

In 24 Tex.Jur. 892, sec. 157, it is said that "By treating the policy of insurance as being in full force and effect, the insurer may no doubt preclude itself from asserting that the contract had been forfeited because of a failure to pay premiums in accordance with the provisions thereof."

In Underwood v. Security Life & Annuity Co., 108 Tex. 381, 194 S.W. 585-587, the policy was forfeited because of failure to pay a quarterly premium when due. After the forfeiture the company wrote letters to the insured, just as was done in the instant case, referring to "Your policy No. 1319" and requesting payment of the premium. The court held that " * * * in these letters the insurance company plainly recognized the validity of the policy long after the forfeitures occurred, * * *." In American National Ins. Co. v. Tross, 138 Tex. 116, 157 S.W.2d 620, affirming a judgment of this court, 138 S.W.2d 872, a similar contention was made. It seems that when the policy was delivered by defendant's agent, insured expressed a wish to pay premiums annually instead of quarterly, as had been originally agreed. The agent altered the official premium receipt accompanying the policy, accepted the changed premium and delivered the policy. The company received and kept the premium. In a suit on the policy after insured's death, the contention was made that because of the limitation on the agent's authority contained in the policy and prescribed by statute, the company was not liable; but this court as well as the Supreme Court held otherwise, as both courts held that the company had waived the lack of authority, if any, in the agent. Disposing of the question, the Supreme Court said [138 Tex. 116, 157 S.W.2d 621]: "We do not find it necessary for us to determine what would be the rights of the parties if an agent without authority should collect a premium under the circumstances herein set out. Compliance with the provisions of the policy limiting

the authority of an agent to collect premiums could be waived by the insurance company."

By receiving at its home office the monthly premium together with the agent's message, keeping same fifteen days before insured's death, writing to Vela the letter of December 4, 1942 recognizing the validity of the policy, we think appellee waived Kubena's lack of authority, if in fact such was lacking. It seems that when the premium was received at the home office it was entered on the "Suspense Account." It is obvious, we think, that this was a mere matter of ex parte bookkeeping on the part of appellee, and in no sense binding upon or prejudicial to appellant. The material fact is that appellee received and retained the premium under its control, to be disposed of as it should see fit to do.

Answering a similar contention in Dunken v. Ætna Life Ins. Co., 221 S.W. 691, 696, app. dismissed, the Court of Civil Appeals said: "It is urged that we have practically nullified article 4968, Revised Statutes, which provides that an agent soliciting insurance shall be deemed the agent of the company, but shall not have the power to waive, change, or alter any of the terms or conditions of the application or policy. We have not intended to hold, nor do we hold, that Alexander had such power, but merely that his acts, tending to show a waiver, would be binding on the company only when authorized or acquiesced in by some executive officer named in the policy, with knowledge of his acts. In such case it is our opinion that the statute is not violated. It is competent for an insurance company to stipulate in the policy, as here, that a waiver may be accomplished only through the acts or conduct of executive officers, but that stipulation itself may be waived by the company, and a waiver may result by acts of its agents authorized or acquiesced in by such officers. The acts of the agents then become the acts of the company, notwithstanding the statute, which was enacted for the benefit of such companies." To the same effect, see Lone Star Insurance Union v. Brannan, Tex.Civ.App., 184 S.W. 691.

One of appellee's contentions is stated in Great Southern Life Ins. Co. v. Peddy, 139 Tex. 245, 162 S.W.2d 652, 653, as follows: " * * * when a policy specifically provides for the payment of premiums, and expressly specifies the date from which the premium period is to be computed, and makes that date the date on which recurring premiums are due and payable, such date will control, irrespective of the date on which the policy is delivered." However that may be, we are of opinion that the policy in suit was modified by Kubena's agreement with Mrs. Vela in connection with appellee's waiver or ratification concerning that agreement. The modification changed its written provisions by providing for monthly rather than quarterly payment of premiums and, as modified, the policy contains no date for the payment of monthly premiums; hence we think the date of delivery must control and under the grace period of thirty days allowed by statute, the policy would not have lapsed until December 19, which was after the date of insured's death. In this connection we call attention to a similar situation presented in Great Southern Life Ins. Co. v. Alcorn, Tex.Civ. App., 80 S.W.2d 429, 430, writ refused. There the life policy was executed August 7 and mailed to the insured three times before it was received on November 18. The court held that the policy was not effective until November 18, in view of the provision of the application (similar to a provision in the application in the instant case) that the contract should not be binding until receipt and acceptance by the insured. Therefore the court held that the premium period should be computed from November 18, the date of actual delivery; in the present case October 19, as found by the jury, was the date of actual delivery. In the instant case Kubena testified that after receiving the policy from the home office he took the same to Mr. and Mrs. Vela several times and they would tell him to come back, and finally they accepted it and asked for the change in the payment of premiums. Speaking of Alcorn's application to the insurance company, which, like the application in the instant case, provided that the contract should not be binding until receipt and acceptance by the insured, the court said: "Alcorn, in making his offer to the appellant, reserved the right to accept or

218

reject the written contract of insurance when it reached him, and provided that the contract should not be binding until the actual delivery to, and acceptance by, him of the contract. * * * But the agent cannot compel Alcorn's acceptance, a right which he had and which he did not exercise until November 18, 1931." The court also held that since the policy did not specify a date for payment of premiums, the delivery date was the date from which the premium period should be computed. So we are of opinion that even if appellee is not estopped to urge the lapse of the policy as a defense, nevertheless, in view of what has just been said, we are of opinion that the policy had not lapsed at the time of the death of the insured.

We think the court erred in rendering judgment non obstante veredicto; therefore the same is set aside and judgment is here rendered against appellee in favor of the appellant for $3,800 (principal, penalty and attorney's fees of $1000 as found by the jury) with 6 per cent interest from December 12, 1942, costs of suit, and for $350 additional attorney's fees for services rendered on the appeal of the case, as found by the jury.

Reversed and rendered.

YOUNG, Justice, dissents.

On Motion to Strike Statement
of Facts.

LOONEY, Justice.

The motion filed by appellee to strike the statement of facts was submitted to be considered with the case on its merits.

Appellee moves to strike on the ground that the statement of facts was not filed in the trial court within fifty days after rendition of final judgment, as required by Procedural Rule 381. The record reveals that judgment was rendered April 23, 1947; the statement of facts was filed in the trial court June 20, 1947; the trial court neither approved the statement of facts nor did it extend time for filing.

Answering the motion to strike, appellant alleged under oath that the statement of facts was ordered May 14, 1947, was not received from the court reporter until June 11, 1947 at Falfurrias, Texas, where appellant's counsel resided, too late to be filed in the trial court at Dallas by June 12, the last day for filing; but that on June 12 the same was mailed to Mr. Dillard, appellee's counsel, for his approval, signature, and for filing; that he agreed to sign, and on June 20, 1947 sent the statement to the clerk of the trial court to be filed, without making any objection or reserving the right to make an objection to the late filing of the statement of facts; and that the same was timely filed in the Court of Civil Appeals. Wherefore, appellant contends that appellee waived the irregularity and is now estopped to urge the same.

■ It will be observed that the only case cited by appellee in support of the above contention is that of Seaboard Fire & Marine Ins. Co. v. Halbert, Tex.Civ.App., 173 S.W.2d 180. This case, in our opinion, is easily distinguished from the case under consideration, in that counsel for appellee in the cited case, in agreeing to the statement of facts, reserved the right to object to its being filed, because not tendered for filing in time. There was no such reservation in the instant case. We are of opinion, therefore, that the conduct of appellee's counsel in approving the statement of facts and having it filed belatedly, waived the irregularity.

■ We are furthermore of the opinion that the irregularity was waived as a matter of law under Procedural Rule 404 (formerly, Rule 8 of the Court of Civil Appeals), in that the record was filed in this court on June 20, 1947; whereas, the motion to strike statement of facts was not filed until something over five months thereafter. Courts have uniformly held that the failure to file a statement of facts in the trial court within the time required as not jurisdictional, but an irregularity that may be waived; and that failure to move in the court of civil appeals to strike within thirty days after the transcript is filed, constitutes waiver of any objection for failure to file in the trial court within the time prescribed. This rule was announced in Brown v. Orange County, 48 Tex.Civ.App. 470, 107 S.W. 607, writ denied; same ruling in Conn v. Houston Oil Co., Tex.Civ.App., 171

S.W. 520, writ ref.; in Jefferson v. Williams, Tex.Civ.App., 286 S.W. 614; and in Green v. Gerner, Tex.Civ.App., 20 S.W.2d 1118.

Appellee also contends that appellant failed to assign any error requiring reversal of the cause, as required by Rule 374; also that appellant's brief violates subsection (b) of Procedural Rule 418, in that the points of error urged by appellant fail to direct the court's attention to the errors, if any, of the trial court upon which appellant relies for reversal; therefore, the judgment below should be affirmed.

The record discloses that judgment was rendered against appellant notwithstanding the verdict; hence a motion for new trial was not required by Rule 324; and, a motion for new trial not being required, assignments of error were not required; but only that the errors complained of should be presented in the points of errors relied upon in the brief, as provided in Rule 374.

While the points relied upon are rather general in nature, we think that in view of the liberal rules, they are sufficient to direct the attention of the court to the errors relied upon. In an address before the Houston Bar Association on September 19, 1941, the late Chief Justice Alexander, in discussing the sufficiency of points of error, made the following statement: "It will be noted that the new rules are very liberal as to the requirements of 'points'. All that is required is that the point 'direct the attention of the Court to the error relied upon.' It will be noted that the note following Texas Rules of Civil Procedure No. 418 contains an example as follows: 'The error of the Court in refusing to charge upon the issue of appellant's liability under the family purpose doctrine.' Other points might be illustrated as follows: 'The failure of the court to render judgment for defendant on the jury's finding of contributory negligence on the part of plaintiff.' 'The error of the court in overruling defendant's motion for a continuance.' 'The misconduct of the jury in visiting the scene of the accident during the trial.' * * *."

Therefore, we are of opinion that appellee's motion to strike the statements of facts and to affirm, should be and hereby is overruled.

YOUNG, Justice (dissenting on rehearing).

The trial court correctly rendered judgment for defendant, regardless of jury findings because the material facts of this record are largely undisputed and conclusively demonstrate that no policy of insurance had ever issued on the life of plaintiff's husband or was in force at time of his death. These are the facts, stated in chronological order:

On September 12, 1942, Aurelio Vela made application to Southland Life Insurance Company through W. L. Scheig, a soliciting agent of the company at Robstown, Texas, for an ordinary life policy in amount of $5,000, to be issued on payment of quarterly premiums. In the application Vela stated his age as 41 years and birth date as April 20, 1901. Other provisions of the application contained the following: "(2) That the policy or policies issued in consequence thereof shall constitute the entire contract of insurance and the company shall not be bound in any way by any promise or statement made by or to any agent, or other person, unless such promise, statement, or information be reduced to writing and submitted to the company and made a part of the contract" (similar to Articles 4732 and 5063, Vernon's Ann.Civ. St.); "(3) That there shall be no liability hereunder until a policy shall be issued and manually delivered to me and accepted by me during my lifetime and continued good health, and the first premium thereon shall be actually paid to and accepted by the company or by its duly authorized agent * * *." This application was received by the home office at Dallas on September 16, 1942.

The company declined to issue a $5,000 policy, also to issue any policy upon the rate set out in the application, but, instead, issued a policy for $2,500, rated "Table B" which was a higher rate than requested. The policy so issued was numbered 260,555 (the one referred to in plaintiff's petition) and dated September 18, 1942. In part, the instrument stated: "This policy is issued at age forty-one in consideration of

the payment, in advance, of the quarter annual premium of Twenty Two and 33/100 Dollars and of the further payment of a like amount upon the 18th day of each September, December, March and June thereafter until the death of the insured." "In witness whereof, The Southland Life Insurance Company has caused this policy to be executed as of the 18th day of September, 1942, the date on which it becomes effective and from which Loan and Surrender Values will be computed." On other pages the policy provided in language of the statute that the same and application should constitute the entire contract between the parties, etc; also that "No agent is authorized to modify this policy or in the event of lapse to reinstate it or to extend the time for paying a premium. Only the President, Vice-President, Secretary, Actuary, or Assistant Secretary has the power on behalf of the Company to modify this or any contract of insurance and then only in writing at the Home Office of the Company, and the Company shall not be bound by any promise or representation heretofore or hereafter made by any other person."

Above policy was mailed about September 23, 1942, to Joe Kubena, a soliciting agent of Southland at Robstown, the accompanying invoice stating that unless the policy was delivered before October 23, 1942, it was to be returned for cancellation. Kubena's agency contract offered in evidence, included the provision: "It is agreed that under no circumstances shall a policy be delivered unless the applicant is in good health at the time of such delivery, and the first premium as required by the terms of the policy is duly settled for * * *"; further " * * * the Agent is not authorized to make, alter, or discharge contracts; to waive forfeitures, to name an extra rate for a special risk, nor to incur any liability or expense whatever on behalf of the Company."

According to Kubena, between date of receipt of the policy in September and October 19, he made several attempts to collect the first premium and effectuate delivery, but was unable to do so. In fact it was his testimony that the policy was never delivered, he allowing Mrs. Vela to have it only to "look over." Finally on October 19, Vela paid Kubena $5, taking the latter's personal receipt written on a piece of paper. Mrs. Vela (beneficiary and agent of deceased) testified that the policy was in her possession from October 19 to the 26th, but made no explanation as to why, under what condition, or for what reason it was left with her without payment of the monthly premium of $7.44. At any rate, on the latter date she paid Kubena $2.44, who receipted for the sum on another piece of paper. Testimony of Mrs. Vela is here quoted:

"Q. What happened on October 26, 1942? A. He went to collect from me the rest of the money.

"Q. Who is 'he'? A. Joe Kubena.

"Q. And what happened at that transaction—what did he say to you, and what did you say to him? A. He sent for the money, and then I changed my mind, and instead of paying him three dollars—I mean for three months, I was supposed to pay for three months—I paid him two pesos and 44 centavos (meaning $2.44). * * *

"Q. Now, what did Mr. Kubena tell you would be necessary to be done with the policy, so far as the monthly payments were concerned—as to the monthly payments? A. He told me I could not hold the policy because it was to be paid differently—do you understand, Senor—it was to be paid differently. * * *

"Q. And did you give him the policy? A. Si, Senor,—yes.

"Q. What—what did he say he was going to do with the policy, if anything? A. He told me that he was going to return it to the company—do you see—Senor?

"Q. Did he say why he was returning it to the company, Mrs. Vela? A. Because he was arranging differently—the monthly payments—for the premium—do you understand me?

"Q. And now, Mrs. Vela, what did you tell him with regard to giving him the policy at that time—what did you say about the monthly payments—the monthly premium? A. I told him to bring me another policy. I told him that I had decided—that I had decide on a similar policy but which I would pay by the month, because it

seemed to me to be a little less money—do you see?"

On November 23, Kubena mailed the policy and money order for $7.44 to the home office, with letter reading: "Enclosed you will find my money order for $7.44 to change from quarterly to monthly basis policy No. 260555, Aurelio Vela." The letter and contents were received at Dallas November 25, the money never being credited to premium, but placed in a suspense account, Mr. Candler of the Policy Department promptly writing Kubena the following letter, dated November 30: "Dear Mr. Kubena: We are in receipt of settlement in the amount of $7.44, covering one monthly premium on the above numbered policy. The policy was returned to us with the request that it be reissued with mode of premium payment changed from quarterly to monthly. This policy was originally issued under date of September 18. If one monthly premium is applied on the policy, premiums would be paid until October 18 and the policy would now be in ·a lapsed state. However, no advance in the date of this policy can be made unless we receive correct evidence of health completed by Mr. Vela. The date of birth of this insured was given as April 20, 1901, on the original application. Any advance in the date of this policy beyond October 19, 1942, would cause a change in insurance age from 41 to 42. If the date of this policy is advanced to October 19 at insurance age 41, it will be necessary for us to have settlement covering another monthly premium to keep the re-issued policy out of its grace period when released. Please have the enclosed health certificate completed by Mr. Vela. If a policy dated October 19 at an insurance age of 41 is desired, settlement covering another monthly premium should accompany the enclosed health certificate. If a current dated policy at insurance age 42 is desired, no additional settlement will be required. Please advise us with regard to this matter when the completed health certificate is returned."

The next communication to the company was a post card from Aurelio Vela dated November 27, received at the home office November 30, saying: "Please write to me about my policy No. 260555 on which agent sent money some time ago." In response, Mr. Candler wrote Vela on December 4, stating in part: "Under date· of November 30, we wrote our representative, Mr. Joe H. Kubena, at some length with regard to this policy, requesting that he discuss with you a proposed change. If Mr. Kubena has not yet seen you with regard to this matter, I am sure that he will within the next few days." Mrs. Vela testified that neither she nor her husband made any attempt to see Kubena with respect to this letter, because they had left Robstown about December 1st, going to San Antonio where they stayed until Vela's death on December 12. After receipt of the post card from Vela, Mr. Candler again wrote Kubena quoting the language of the post card and enclosing a copy of letter written to Vela of December 4th, stating further: "If you have not yet contacted Mr. Vela with regard to change outlined in our memo of November 30, please do so immediately."

On December 17, 1942 the company was advised by plaintiff of her husband's death; in answer, making an absolute and unequivocal denial of liability; at the same time writing Kubena of the facts, accompanied by check for $7.44, with instructions that it be returned to Mrs. Vela as a refund. She could not be located at that time, her attorneys much later declining to accept it. The company also made a formal tender.

Appellee heard nothing further in connection with the matter until nearly two years after the death of Vela (November 3, 1944), when it received a letter from appellant's counsel demanding full payment under the alleged policy. It is to be noted in this connection that the Velas did not furnish the health certificate referred to in Candler's letter of November 30; also that the policy was never changed at the home office, was never reissued as requested; and, in fact, the very policy (260,-555) sued on, at all times after its return by Kubena, was retained in the files of the home office, stamped "Not Taken."

The facts as above narrated simply boil down to this: To Vela's application of September 18 for a $5,000 policy, premiums quarterly, the company made a counter proposal by issuing to him a $2,500 policy on a like basis. On Kubena's demand (about

October 26) for premium payment, the policy was returned to him with request for "another policy" with premium payable "differently" or monthly. Such request and policy being forwarded to the company, its letter of November 30 (of which the Velas had notice) outlined the conditions incident to issuance of a monthly payment policy, including requirement of a new health certificate. Thus the matter stood at Vela's death and, without necessity of argument, the conclusion irresistibly follows that no contract of insurance was thereby consummated.

But the majority holds in effect that in the deal between Kubena, soliciting agent, and Mrs. Vela there was a delivery of the policy, its return to Kubena for "another policy" being pursuant to a mutual understanding for a change to monthly payments; the instrument going back to the company for a rider to such effect, as mere office routine. No testimony is cited relative to such an understanding or agreement; appellant's counsel only contending in his brief that Mrs. Vela asked Kubena *to have* the policy changed, not that the agent had changed it himself. Whatever be the state of the record, however, any agreement on part of Kubena to effectuate the policy on a monthly basis becomes inmaterial in view of express provisions of the contract and familiar statutes. Arts 4732, 5063, Vernon's Ann. Civ.St. In Southland Life Ins. Co. v. Statler, 139 Tex. 496, 163 S.W.2d 623, 630, notwithstanding an agreement by the soliciting agent changing annual premiums to quarterly, redating of policy and acceptance of the quarterly charge with assurance to Statler that it was immediately in force, the Supreme Court held that no contract of insurance resulted, saying: "It is the settled law of this State that under the above statutes a mere soliciting agent of a life insurance company has no power or authority to make any contract on behalf of his company, or to waive the terms of the policy or the application therefor. (Citing authorities). From the very nature of its business, a life insurance company such as this ought to know what insurance risks it has assumed; and any rule of law which would permit a mere soliciting agent of such a company to put in force oral contracts of life insurance would result in intolerable conditions, and make it impossible for such companies to conduct their affairs in accordance with the numerous regulatory statutes of this State."

Next, and with all due respect, I emphatically disagree with the majority conclusion that the company "letter of December 4, 1942, addressed to Mr. Vela in regard to the policy, constituted an acknowledgment on behalf of appellee of the policy's validity and constituted an effectual ratification of Kubena's transactions in regard to the delivery of the policy and the change in the method of paying premiums." The letter just referred to is incomplete except in connection with that of November 30 to which it had reference and, far from constituting any evidence of waiver, ratification or estoppel, the communication of November 30 specifically declined to make *the change as requested;* notifying all parties of the conditions precedent to issuance of a monthly payment policy, a prime requisite being another and current certificate of health.

In Denton v. Kansas City Life Ins. Co., Tex.Civ.App. 231 S.W. 436, 441, a somewhat similar letter from the general agents of the company to a local agent was held competent and admissible, the court saying: "It was the contention of the appellant that delivery of the policy to the local agent was delivery to the insured, and it was permissible for the company *to show what were the instructions to its agents before it finally accepted the proposal and effected a delivery."* (Emphasis ours.) In Southland Life Ins. Co. v. Statler, supra, numerous letters passing between the company and its soliciting agent were held to conclusively refute the contention that the company had authorized such agent to bind it to an oral contract of insurance or "to waive, change, or alter any of the terms or conditions of the application or the policy." See also Supreme Court opinions of Railway Mail, etc., Ass'n v. Henry, 143 Tex. 89, 182 S.W.2d 798 and Great Southern Ins. Co. v. Peddy, 139 Tex. 245, 162 S. W.2d 652.

Neither was the letter of December 4, standing alone, any evidence of waiver or ratification. Beaty v. Southland Life Ins.

Co., Tex.Civ.App., 28 S.W.2d 895; Texas Life Ins. Co. v. Mansel, Tex.Civ.App., 105 S.W.2d 899.

Without further discussion, this dissent is intended to include and fully concur in appellee's counterpoints 3 and 4, each of which presents a complete answer and defense to appellant's cause of action as pled. (3) "The trial court correctly entered judgment for appellee because appellant having elected to sue on an alleged written policy of insurance and the application therefor (stated to contain the entire contract between the parties) providing for quarter annual premium payments and an effective date of September 18, 1942, as a matter of law cannot recover on an oral contract allegedly providing for a monthly premium and a different effective date." (4) "The trial court correctly entered judgment for appellee because appellant's pleadings for the undisputed facts show that (a) the alleged policy, if it was ever effective, was effective as of September 18, 1942, the date stated on the face of the policy; and (b) only one monthly premium was paid; therefore, the policy had lapsed before December 12, 1942, the date of the death of Aurelio Vela."