SOUTHLAND LIFE INSURANCE COMPANY V. AGUEDA G. VELA.

No. A-1812. Decided January 26, 1949.
Rehearing overruled March 9, 1949.
(217 S. W., 2d Series, 660.)

*R. L. Dillard, Jr.,* of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that a soliciting agent of a life insurance company could make an arrangement for an oral contract of insurance specifying no date for premium payments and altering the contract sued upon by changing such date from quarterly to monthly payments and the amount of such payments. Also in holding that a letter from the company denying liability created an estoppel, waiver of ratification so as to put in force an oral contract of insurance with no effective date or dates for premium payments. Also in holding that a policy issued September 18, 1942, on which one monthly premium had been paid, had not lapsed of December 12, 1942. Southland Life Ins. Co. v. Statler, 141 Texas 110, 163 S. W. (2d) 623; Wichita Falls & Okla. Ry. Co. v. Pepper, 134 Texas 360, 135 S. W. (2d) 79; Great So. Life Ins. Co. v. Peddy, 139 Texas 245, 162 S. W. (2d) 652; Holbrook v. Southland Life Ins. Co., 129 S. W. (2d) 448.

*Weatherly & Weatherly,* and *Gerald Weatherly,* all of Falfurrias, for respondent.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

This is a suit by respondent, Agueda G. Vela, on a policy of insurance allegedly issued by petitioner for $2,500.00 upon the life of Aurelio Vela, payable on his death to respondent, his widow. In the trial court the jury found in answer to special issues that the policy was delivered by the local agent of petitioner on October 19, 1942, "not for inspection only"; that the policy remained in the possession of the Velas for seven days; and that the death of Vela was not the result of self-destruction. The only other issue submitted related to the amount of attorney's fees to be awarded to respondent's attorney for prosecuting the suit. After the verdict was returned the court sustained petitioner's motion for judgment non obstante veredicto and rendered judgment that respondent take nothing. The Court of Civil Appeals, one of the justices dissenting, reversed the judgment of the trial court and rendered judgment in favor of respondent. 212 S. W. (2d) 210.

On September 12, 1942, Vela made application to petitioner for an ordinary life policy in the amount of $5,000.00, with premiums payable quarterly. The company declined to issue the policy in that amount, but did issue one, dated September 18,

1942, in the amount of $2,500.00, premiums payable quarterly, but at a higher rate than that set out in the application. This policy was mailed to Joe Kubena, a local agent of the company at Robstown, on September 23, 1942, with instructions that same be returned to the company at its home office in Dallas if not delivered by October 23rd. On October 19th Kubena placed the policy in the hands of respondent, who was acting for her husband in the transaction. The jury found that the policy was placed in her possession at that time "not for inspection only." On that date respondent paid Kubena $5.00 on the first quarterly premium of $22.33 and was given a receipt therefor by Kubena. One week later, on October 26th, respondent paid Kebena $2.44, which Kubena calculated to be the balance of a premium payment for one month, respondent having decided that she desired to pay the premiums monthly instead of quarterly. Kubena issued her a receipt for this additional payment and took the policy for the purpose of returning it to the company to have the premium payment provisions changed from quarterly to monthly payments. On November 23rd, thereafter, Kubena mailed the policy to the company's home office, accompanying same with a money order for $7.44 and a letter reading as follows:

"Enclosed you will find my money order for seven dollars and forty four cents $7.44 to change from quarterly to monthly policy #260555 Aurelio Vela."

That letter was received by the company at Dallas on November 25th. The company caused the money order to be cashed and the money placed in a suspense account. Five days later, November 30th, the company, through W. L. Candler of the Underwriting Department, wrote Kubena as follows:

"We are in receipt of settlement in the amount of $7.44, covering one monthly premium on the above numbered policy. The policy was returned to us with the request that it be reissued with mode of premium payment changed from quarterly to monthly.

"This policy was originally issued under date of September 18. If one monthly premium is applied on the policy, premiums would be paid until October 18 and the policy would now be in a lapsed state. However, no advance in the date of this policy can be made unless we receive current evidence of health completed by Mr. Vela.

"The date of birth of this insured was given as April 20, 1901 on the original application. Any advance in the date of

this policy beyond October 19, 1942 would cause a change in insurance age from 41 to 42. If the date of this policy is advanced to October 19 at insurance age 41, it will be necessary for us to have settlement covering another monthly premium to keep the reissued policy out of its grace period when released.

"Please have the enclosed health certificate completed by Mr. Vela. If a policy dated October 19 at an insurance age of 41 is desired, settlement covering another monthly premium should accompany the enclosed health certificate. If a current dated policy at insurance age 42 is desired, no additional settlement will be required. Please advise us with regard to this matter when the completed health certificate is returned."

On November 27 Vela wrote the company as follows:

"Please write me about my Policy #260555 on which agent sent money some time ago."

In response Candler wrote him on December 4th as follows:

"We are in receipt of your inquiry of recent date regarding your above numbered policy.

"Under date of November 30, we wrote our representative, Mr. Joe H. Kubena, at some length with regard to this policy, requesting that he discuss with you a proposed change. If Mr. Kubena has not yet seen you with regard to this matter, I am sure that he will within the next few days."

At the same time Candler wrote to Kubena, enclosing a copy of his letter to Vela and requesting Kubena to see the Velas immediately. Kubena did not see them after receiving the letter, for they went to San Antonio on December 1st where Mr. Vela died on December 12th. Two days later respondent advised petitioner of her husband's death. Upon receipt of her letter it replied as follows:

"We duly received your letter of December 14th notifying us of the death of your husband, Aurelio Vela.

"While it is true that policy #260555 was issued, it was not for the same amount for which the application was made and therefore constituted a counter offer on the part of the Company which was never accepted by the applicant. The policy was never delivered and was not in force for any amount on the life of your husband at the time of his death. The Company

has no liability on account of any application which may have been made by him."

The company heard nothing further about the matter until it received a letter on November 3, 1944, from respondent's attorney demanding full payment of the policy. The company refused to pay, and this suit followed.

■ These facts, in our view, lead to the certain conclusion that no contract of insurance was ever consummated. As soliciting agent, Kubena had no power to waive, change, or alter any of the terms of the application or policy. R. S. Art. 5063; Southland Life Insurance Co. v. Statler, 139 Texas 496, 163 S. W. (2d) 623. The policy and application both set forth these limitations upon Kubena's authority. The case is one in which the company rejected the application for a policy for $5,000.00, premiums payable quarterly, and as a counter proposal tendered a policy for $2,500.00, premiums payable quarterly on named dates, and fixing September 18th as its effective date. Vela paid the soliciting agent the amount of the premium thereon for one month and had the policy returned to the company, not for a change of its effective date, but only for a change from quarterly to monthly premium payments. That change was never made; the policy was retained by the company, and none issued in lieu thereof. While the company was seeking to ascertain facts to enable it to determine whether or not to accept the change requested and reissue the policy, Vela died. The minds of the parties had never met, and the policy was therefore never in force.

But in view of the opinion of the majority of the Court of Civil Appeals and the earnest insistence of respondent's counsel that a contract came into existence on October 19th or October 26th, the case will be discussed further. Respondent must recover, if at all, upon the policy executed by the petitioner on September 18, 1942. This question arises: During what period of time, if at all, was that policy in force? The application signed by the deceased, which is a part of the insurance contract, contains, among others, these provisions:

"In behalf of myself and of every person who shall have or claim any interest in any policy issued in consequence of this application, consisting of Sections One and Two, I hereby agree:

❋      ❋      ❋      ❋      ❋

"(3) that there shall be no liability hereunder until a policy shall be issued and manually delivered to me and accepted by me

during my lifetime and continued good health and the first premium thereon shall be actually paid to and accepted by the Company or by its duly authorized agent, but when so delivered and paid for ,the policy shall be in force from its effective date as shown on the face thereof, and the first policy year shall begin with that date, * * *."

■ The policy issued by the company expressly provided that its effective date was September 18, 1942, and that the premiums were payable quarterly on the 18th day of each September, December, March, and June thereafter until the death of the insured. Had the deceased accepted the proffered policy as written and paid the quarterly·premium provided therein, the effective date named in the policy, September 18, 1942, would have controlled over the date of actual delivery. As stated in Great Southern Life Insurance Co. v. Peddy, 139 Texas 245, 162 S. W. (2d) 652, "The great weight of current decisions sustains the rule that when a policy specifically provides for the payment of premiums, and expressly specified the date from which the premium period is to be computed, and makes that date the day on which recurring premiums are due and payable, such date will control, irrespective of the date on which the policy is delivered." No public policy is violated by a contract between an insurance company and an insured whereby premiums are to be paid from the effective date of the policy rather than the date of its delivery, even though the effect thereof is to charge a premium for a period when the insured has no protection. It was pointed out in the case last-above cited, and in the case of Kurth v. National Life & Accident Insurance Co., Inc., 79 S. W. (2d) 338, writ refused, that it is to the interest of both parties to have a certain date upon which to calculate not only the due dates of premiums but the premium rate, cash and loan value, and the paid-up insurance benefits available to the insured. As observed in the case last cited, to fix an indefinite standard of obligation as between the insurer and the insured would play havoc with both.

■ But it is contended by respondent that the company ratified the oral agreement which she had with Kubena, the soliciting agent, to change from quarterly to monthly payments; that by such agreement the policy was so changed as to contain no date for the payment of recurring monthly premiums; wherefore the date of delivery, rather than the effective date of the policy, must control. Under her theory, by crediting the policy with one month's premium, beginning October 19th or 26th, and then adding to that month the grace period of thirty days, the policy .

was still in force when her husband died on December 12th. We cannot adopt that theory. If it be assumed that Kubena and respondent entered into a contract to change the premium payments from quarterly to monthly, and that such agreement was ratified by the company, still the effect of the provision in the policy naming its effective date as September 18th is to fix the day from which the premiums, whether quarterly or monthly, must be recokoned, and the payment of one month's premium would be applied to the month from September 18th to October 18th. There is no evidence that there was any agreement between respondent and Kubena changing the effective date named in the policy. She requested a change in the mode of payment, but did not request a change in the effective date of the policy. That being true, the grace period had expired before the death of her husband and the policy was not in force at his death.

■ Under the facts no particular significance can be attached to Candler's letter to Vela, dated December 4th, wherein he referred to "your above numbered policy." The policy had at that time already lapsed by its own terms. The mere reference to the policy, which the company had theretofore issued, as "your above numbered policy" could hardly be given the effect of evidencing an intention on the part of the company to create a liability on its part. Clearly, liability was not created by estoppel based upon the letter. An estoppel is defensive in character. It does not create a cause of action. Its function is to preserve rights, and not to bring into being a cause of action. Washington National Insurance Co. v. Craddock, 130 Texas 251, 109 S. W. (2d) 165, 113 A. L. R. 854; Massachusetts Bonding and Insurance Co. v. Dallas Steam L. & D. Works, 85 S. W. (2d) 937, writ refused.

It is our view that the judgment of the trial court denying respondent any recovery is correct. Accordingly it is ordered that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed.

Opinion delivered January 26, 1949.

Rehearing overruled March 9, 1949.