LEGAL SECURITY LIFE INSURANCE COMPANY, Appellant,

v.

H. Earl WARD, Appellee.

No. 11128.

Court of Civil Appeals of Texas.

Austin.

Dec. 11, 1963.

---

Douglas E. Bergman, John W. Hicks, Jr., Dallas, for appellant.

Swaim & Swaim, Eden, McCollum & Townsend, Brady, for appellee.

PHILLIPS, Justice.

Plaintiff, H. Earl Ward, brought suit against the defendant, Legal Security Life Insurance Company, to declare certain hospitalization insurance policies issued by the defendant to the plaintiff to be in full force and effect. The parties will be designated in this opinion as they were in the Trial Court.

Both plaintiff and defendant filed motions for summary judgment. The Trial Court sustained plaintiff's motion and entered judgment thereon.

We reverse the judgment of the Trial Court and render judgment for the defendant.

The facts of the case are as follows: In September of 1960, plaintiff made application to defendant for a hospitalization policy and a monthly cash hospital indemnity policy. Defendant received plaintiff's application for the policies on the last day of September, 1960, and on November 5, 1960 issued the plaintiff the policies in question. To each of these policies the defendant had attached a rider excluding arthritis, sciatica, neuritis, lumbago or rheumatism in any form.

After the policies were issued, the plaintiff wrote the defendant the following letter:

"

Melvin, Texas
Nov. 7, 1960

Legal Security Life Insurance Co

Dear Sir

In regard to your agent Mr Bainey Hines I paid for a Insurance policy. I gave a check for $120.69.

I received a card from the Company honoring my purchase but I was to inspect the policy if it was what I told them I would accept it. I have waited longer enough to receive the policy but have not.

I want my money or the policy if it is what Mr Hines said it was. If the policy has not been written just mail my money for I think I have waited long enough.

I gave the check 9–28–60. You cash it October 14

I am a busy man do not have time to wait any longer

Yours truly

H. Earl Ward"

Subsequently the defendant delivered the policies to the plaintiff in the middle of November, 1960 with the riders mentioned above attached thereto.

On November 21, 1960, the plaintiff, through his attorneys, wrote the defendant stating that the riders were not authorized by the plaintiff when he purchased the policies, that he did not accept the policies and demanded the return of his premium. The letter is as follows:

"                                                    November 21, 1960

Legal Security Life Insurance Co.
4516 McKinney Ave.
Dallas 5, Texas

Gentlemen:     Re: Policy No. 8–21477, together with rider thereto attached and Policy No. H–21478, together with riders thereto attached. Said policies being dated November 15, 1960, and issued to H. Earl Ward, P. O. Box 845, Melvin, Texas

Mr. H. Earl Ward has consulted us with reference to the above numbered and dated policies, and requested that the same be cancelled, since each of the said policies has an additional rider which Mr. Ward did not authorize when he purchased these policies. The riders not authorized are the riders entirely typed and appearing with the application signed by Mr. Ward on each policy. Mr. Ward has previously written you that he did not desire to keep these policies; and Mr. Ward paid you on September 28, 1960, the sum of $120.62 by check and which check has been cashed by you people. This check having been given on the Brady National Bank of Brady, Texas.

I am returning herewith these policies with unconditional requirement that these policies be accepted by you and that you refund Mr. Ward's money by return mail.

Mr. Ward applied for these policies in September, and they were not issued until November 15th, which was entitely (sic) too much delay in issuing the same, and further Mr. Ward was supposed to receive a $2000.00 life insurance policy which was not sent; and for these reasons and those further of the riders thereto attached, as herein explained, which were not authorized, Mr. Ward does additionally return these policies for cancellation and does insist that they be accepted and that his money paid you, which is the sum of $120.62, be refunded in full at once.

Thanking you in this connection, we are,

Very truly yours,

SWAIM & SWAIM

By /s/ R. H. Swaim
Attorneys for H. Earl Ward"

The abovementioned letter served as a letter of transmittal whereby the policies in question were returned to the defendant.

On December 5, 1960, the defendant wrote the plaintiff's attorneys, explaining the reason for the riders and requested that plaintiff reconsider his action. This letter is as follows:

"LEGAL SECURITY LIFE INSURANCE COMPANY.
Home Office, 4615 McKinney,
Dallas, 5, Texas.
December 5, 1960.

Swaim & Swaim, Attorneys
Eden, Texas.

RE: H. Earl Ward, Policies H–21477–8 & pending Life Application L–5209

Gentlemen:

We are in receipt of your letter of November 21, 1960 regarding the above-named Insured's request for refund of premium and cancellation of the above policies. We do not feel that the delay involved in the issuance of the policies H–21477 & 48 was over-long, since Mr. Ward's applications. showed some adverse health history and it was necessary that we obtain a report from his physician. It was approximately two weeks before we received the doctor's report.

The rider excluding arthritis was placed on the policy as a matter of company policy, which we feel is fair, both to the Insured and the Company,. since we cannot, of course, accept liability for any condition suffered by the Insured which pre-dates the effective date of the policies. To the best of our knowledge, this is a standard procedure with all insurance companies. in writing a non-cancellable hospitalization plan.

As for the application for life insurance, upon receipt of your letter, we placed the pending application in our suspense file until this matter could be settled, and thus this is the reason the life policy has not been issued.

We respectfully urge that your client reconsider his decision, since the above hospitalization policies are guaranteed renewable and non-cancellable, and we will await your reply before taking further action on this matter.

yours very truly,
/s/ S. H. WARREN"

———◆———

On January 16, 1961, the plaintiff's attorneys, in reply to defendant's letter of December 5th, again wrote the defendant demanding that it return the premiums to the plaintiff. This letter is as follows:

"
January 16, 1961

Legal Security Life Insurance Co
4516 McKninney
Dallas 5, Texas

Gentlemen:    Re: H. Earl Ward Policies H–21477 & 78; and pending Life Application L–5209

Answering your letter of December 5, 1960, we desire to state that we have contacted Mr. H. Earl Ward, and he demands that you return him his. money which he paid you, which is the sum of $120.62, and that this be done at once; that if you do not return his money at once that he will be forced to take other action, and that he will take this action at once.

Most sincerely yours,
SWAIM & SWAIM
By /s/ E. H. Swaim"

On February 28, 1961, the plaintiff through his attorneys, wrote the defendant requesting that it return the policies in question. This letter is as follows:

"
February 28, 1961

Legal Security Life Insurance Co.
4516 McKinney
Dallas 5, Texas

Re: H. Earl Ward, Policies H–21477 & 78, & pending Life Application L–5209

Gentlemen:

This will be your authority to return to the law firm of Swaim & Swaim of Eden, Texas, the above numbered policies.

Thanking you to give this matter your early attention, we are,

Very truly yours,

(Stamped-unreadable)

SWAIM & SWAIM

By R. H. Swaim
Attorneys for H. Earl Ward"

---

On March 8, 1961 the defendant company returned to plaintiff, through his attorneys, the premiums that had been paid on the policies.

On March 16, 1961 the plaintiff, through his attorneys, wrote defendant again demanding the policies.

On March 21, 1961, the defendant, in reply to plaintiff's letter of March 16, 1961, restated its position that the policies in question were not in force.

There is no dispute as to any of the facts in this case.

Plaintiffs defend their judgment in the Trial Court on the theory that the riders attached to the insurance policies were placed there as a matter of company policy and point to defendant's letter of December 5, 1960 wherein the defendant stated, "the rider excluding arthritis was placed on the policy as a matter of company policy, * * To the best of our knowledge, this is a standard procedure with all insurance companies in writing a non-cancellable hospitalization plan." Plaintiff further argues that if the policies were issued in accordance with company policy and in accordance with standard procedure of other companies writing the same coverage, the policies issued were the standard policies of the defendant issued in response to plaintiff's application. That plaintiff got what he applied for. That upon delivery of the policies to plaintiff and after payment of the premiums, the contract was complete.

We cannot agree with plaintiff's contention.

■ The legal relations between an applicant and an insurance company are fundamentally the same as those between parties negotiating any other contract. American Life Insurance Company v. Nabors, Tex.Com.App., opinion adopted by the Supreme Court, 124 Tex. 221, 76 S.W.2d 497.

■ When the defendant company attached the riders excluding the various illnesses mentioned above to the policies in question it was not issuing plaintiff the policies applied for. A qualified or conditional acceptance is a counter offer. Springfield Fire & Marine Ins. Co. v. Hubbs-Johnson Motor Co., Tex.Com.App., 42 S.W.

2d 248. Plaintiff could have either accepted or rejected the counter offer. He chose the latter course.

■ The defendant's letter of December 5 states that the company had not been satisfied with plaintiff's health history as set out in his application for insurance and had procured an additional report from plaintiff's doctor as to the condition of plaintiff's health. After securing this additional information, defendant company had added the riders in question excepting the abovementioned diseases from coverage, thus in effect rejecting the plaintiff's original application or offer and making him a counter offer. In a hospitalization policy an essential element to be agreed upon are the types of infirmities covered. Republic Nat. Life Ins. Co. v. Hall, 149 Tex. 297, 232 S.W.2d 697. Plaintiff's letters, through his attorneys subsequent to defendant's letter of December 5, rejected this counter offer. The minds of the parties had never met and the policy was therefore never in force. Southland Life Insurance Co. v. Vela, 147 Tex. 478, 217 S.W.2d 660.

■■ By his letters of February 28 and March 16, 1961 the plaintiff attempted to accept the defendant's counter offer however at this time the counter offer had been rejected by the plaintiff and had ceased to exist. Acceptance at this time was impossible. As stated in 13 Tex.Jur.2d, Sec. 35, p. 160, "The rejection of an offer by the offeree has the effect of terminating it. Moreover, an offer, after it has once been rejected, cannot thereafter be revived by tendering an acceptance thereof," citing cases.

The judgment of the Trial Court is reversed and judgment rendered for defendant on its motion for summary judgment.

HUGHES, Justice (dissenting).

The Court in its opinion states, "When the defendant company attached the riders excluding the various illnesses mentioned above to the policies in question it was not issuing plaintiff the policies applied for."

It is my opinion that this conclusion does not find undisputed support in the record. Unless it does have such support then the Court errs in reversing this cause and rendering judgment for appellant. I, therefore, respectfully dissent

If a contract of insurance was consummated between the parties then it is undisputed that such contract has not been mutually rescinded.

In appellee's motion for summary judgment it is stated:

"* * * that on or about September 28, 1960, plaintiff made application to defendant for its standard hospitalization policy and its standard monthly cash hospital indemnity policy. That the defendant received plaintiff's application for said policies on or about September 30, 1960, and that on or about November 5, 1960, defendant issued to plaintiff the policies in question, * * *"

Without re-copying it, I refer to the letter of December 5, 1960, from appellant to appellee's attorneys set out in the Court's opinion in which it is stated, in part, in referring to the rider about which appellee had complained, "To the best of our knowledge, this is standard procedure with all insurance companies writing a non-cancellable hospitalization plan."

Attached to appellant's motion for summary judgment is an affidavit of one of its officers containing the following statement:

"STATE OF TEXAS ⎱ AFFIDAVIT
COUNTY OF DALLAS ⎰

"BEFORE ME, the undersigned authority, on this day personally appeared Douglas E. Bergman, who being known to me as a credible person of legal age, qualified to make this Affidavit, and being first duly sworn upon oath deposes and says:

"That I, Douglas E. Bergman, make this Affidavit of my own knowledge; that I have the authority to make this Affidavit; that I make this Affidavit as Vice-President of Legal Security Life Insurance Company in Cause No. 6,791, 35th Judicial District Court of McCulloch County, Texas, styled: H. Earl Ward vs. Legal Security Life Insurance Company.

"That the Defendant, on or about September 30, 1960, received from Plaintiff two applications for insurance coverage. One application being for the Defendant's standard hospitalization policy and the other application being for the Defendant's monthly cash hospitalization indemnity policy. Each respective application is dated September 28, 1960. That the Defendant on or about November 5, 1960, issued to Plaintiff its Policy No. H–21477, standard monthly cash hospital indemnity policy, and its Policy No. H–21478, being its standard hospitalization policy. That a photostatic copy of each said policy is attached to Defendant's First Amended Original Answer. That at the time Defendant issued the policies in question it attached to each said policy a rider excluding arthritis, sciatica, neuritis, lumbago or rheumatism in any form."

---

The riders in question recite that they are "attached to and forming a part of" the policy of insurance.

When these policies were sent to appellee by appellant there apparently was no letter of transmittal accompanying them since no such letter appears in the record. The inference to be drawn from this fact is, to me, that such policies were forwarded in response to and in accordance with the application of appellee. Any other inference would impute bad faith to appellant, an inference which should not be indulged.

It is my opinion that an issue of fact is presented as to whether or not a contract, or contracts, of insurance between the parties was effected, the admissions and disclaimers of the parties not resolving this issue as a matter of law.