E. F. HUTTON & COMPANY, INC., Appellant,

v.

George M. FOX et al., Appellees.

No. 18382.

Court of Civil Appeals of Texas, Dallas.

Nov. 27, 1974.

Rehearing Denied Dec. 30, 1974.

John Andrew Martin, Carrington, Coleman, Solman, Johnson & Blumenthal, Dallas, for appellant.

Clarence O. Bentley, Bentley & Ivy, Dallas, for appellees.

GUITTARD, Justice.

Eugene Kiser and George Fox sued E. F. Hutton & Company for interest paid by Trans World Airlines on its registered bonds sold by plaintiffs to defendant after TWA had announced its intention to make such a payment. The trial court, sitting without a jury, found that plaintiffs sold their bonds in reliance on a representation by defendant concerning the earliest date on which they could do so and retain the right to receive this interest, and, based on this finding, rendered judgment for plaintiffs for the amount of the interest paid. Defendant appeals on the ground, among others, that the court erred in allowing plaintiffs to recover on a reliance theory of damages without any finding or proof of detrimental injury resulting from such reliance. On this ground we reverse the judgment and remand the cause for another trial.

The material facts are undisputed. Plaintiffs were customers of defendant, a national brokerage firm. On defendant's advice, plaintiffs had bought registered bonds issued by Trans World Airlines, bearing 6½ per cent interest, and due in 1978. These bonds were listed on the New York Stock Exchange, and certain payments of interest were in arrears. In February 1972, TWA sent a letter to the bondholders announcing that on June 1, 1972, it would make the regular interest payment of 3¼ per cent to bondholders of record on May 19, 1972, and would also pay them

the 6½ per cent arrearage for the previous year. After this announcement, plaintiffs, acting on advice of defendant's employee Arthur Woerheide, bought additional bonds on margin, bringing their total holdings to $95,000 in face amount for plaintiff Kiser and $86,000 for plaintiff Fox. All these bonds were pledged to secure plaintiffs' margin accounts with defendant. They were held by defendant in "street name," that is, in the name of the defendant broker, and were commingled with other bonds so held by defendant.

Since the TWA bonds were in arrears on payment of interest, they were traded "flat," that is, for a fixed price without a separate calculation of accrued interest. Woerheide suggested that in order to get the maximum advantage from the interest payment to be made on June 1, 1972, plaintiffs should sell their bonds on the first day they could do so and retain the right to receive the interest. They instructed him that they desired to adopt that course, and asked him when that day would be. He replied that he would find out and let them know. Accordingly, he contacted defendant's New York office and received a teletype message dated May 18, 1972, as follows:

Transworld Airl—Record Dte On TWA 6½ 1978 Is May 19.

Owner Could Sell Bonds. May 20 and Still Get Arrearage.

After receiving this message, Woerheide relayed its contents to plaintiffs, who instructed him to sell the bonds at the market price as soon as he could after May 19. Since May 20 and 21 were not trading days, defendant executed the order on May 22 in a transaction by which defendant bought the bonds as principal at a price of 94⅞, which was at a slight discount of the market price, in lieu of selling the bonds to another buyer and charging a commission. The record does not show when these particular bonds were resold by

defendant, since they were commingled with others in the margin account, but the parties stipulated that if defendant had not sold the bonds until after June 1, defendant received the interest, and if it sold the bonds on or before June 1, the purchaser received the interest. The amount of the interest paid was $9,267.50 on Kiser's bonds and $8,385 on Fox's bonds. Plaintiffs never received these amounts, but did receive the proceeds of the sale and realized a small gain over the price at which they had bought the bonds.

On defendant's failure to pay them the interest, plaintiffs sued, alleging that defendant had assured them that they could sell the bonds on May 20, 1972, and still receive the interest which was to be paid June 1, 1972, because they would have been holders of record on May 19, 1972, and that this assurance was confirmed in writing by defendant's New York office. Plaintiffs further alleged that in reliance on this assurance and confirmation they sold the bonds on May 22, that defendant purchased the bonds for its own account, and that thereafter defendant paid plaintiffs the principal amount for the bonds but failed and refused to pay the interest.

The trial judge appears to have adopted this "reliance" theory as the basis for his judgment. His findings of fact include the following:

IV. Defendant's agents, servants and employees advised plaintiffs, both orally and in writing, that if plaintiffs held such bonds on or after May 20, 1972, plaintiffs could then sell the bonds and receive the interest payment on the bonds which was to be paid on or about June 1, 1972.

. . . . . .

X. That plaintiffs acted in reliance on information furnished to them by the defendant, their broker

XI. That plaintiffs would not have otherwise sold the bonds on such date;

XII. That plaintiffs' respective positions were changed by the sale of the bonds, income tax-wise and in other ways.

The judge's "conclusions of law" are (1) that plaintiffs were relying on defendant as a broker, (2) that defendant induced plaintiffs to sell the bonds by making a representation as to the date on which the bonds could be sold with plaintiffs still getting the interest thereon, (3) that defendant purchased the bonds on its own account, (4) that defendant received the interest payment on the bonds and held same as agent for plaintiffs, and (5) that defendant is obligated to pay the interest to plaintiffs.

■ The recovery allowed by the trial court is not based on any accepted rule of law and is not supported by authority. The finding of a representation suggests fraud, but the judgment cannot be sustained on the theory of fraud, actual or constructive, since there is neither allegation nor finding that the "representation" alleged and found was false. The findings of representation, reliance, and change of position also suggest the elements of an equitable estoppel, but the judgment cannot be sustained on that theory, since estoppel is defensive in character. It does not in itself create a new right or cause of action, but operates only to protect the person invoking it in a right previously acquired or from a loss already inflicted. Southland Life Ins. Co. v. Vela, 147 Tex. 478, 217 S. W.2d 660, 663 (1949); Dobbs v. Camco, Inc., 445 S.W.2d 565, 571 (Tex.Civ.App.— Houston [1st Dist.] 1969, writ ref'd n. r. e.). Although recent authorities hold that a cause of action may rest on "promissory estoppel," there is no allegation or finding of any promise by defendant that it would pay plaintiffs both the market value of the bonds on May 22 and the interest to be received on June 1. Moreover, the damages recoverable in a case of promissory estoppel are not the profit that the promisee expected from acting in reliance on the promise, but the amount necessary to put the promisee in the position he would have been in if he had not so acted. Wheeler v. White, 398 S.W.2d 93, 97 (Tex.1965). The amount necessary to put plaintiffs in the position they would have been in if they had not sold their bonds on May 22 in reliance on defendant's representations is the value of what they owned on that date, less the proceeds they received from the sale. No such value was alleged by plaintiffs, found by the court, or established as a matter of law.

■ If the price plaintiffs received for their bonds on May 22 was the value of their bonds, not including the right to receive the interest payment expected on June 1, then the trial court correctly awarded them the amount of the interest, since that amount would be necessary to put them in the position they would have been in if they had not sold their bonds. On the other hand, if the price they received was the value of their bonds including the right to receive the interest, then the proceeds of the sale represents the full value of what they owned on that date, and the recovery awarded by the trial court puts them in a better position than they would have been in if they had not sold their bonds in reliance on defendant's representation because it allows them to receive the amount of the same interest payment twice.

The record presents at least a fact issue on this question. There is evidence tending to show that the amount they received was the full value of what they owned at the time of the sale. The parties stipulated that the values during each trading day in April, May, and June 1972 were the averages of the high and low sales prices on the exchange as reported in the Wall Street Journal. A chart containing these quotations from the Wall Street Journal was attached to this stipulation, and it was admitted in evidence over plaintiffs' objection that the information shown was not

relevant to the issues. The prices quoted are for each one hundred dollars of face value. Among the quotations are the following:

| DAY | HIGH | LOW | CLOSE | NET CHARGE [sic] | |
|---|---|---|---|---|---|
| May 19 | 95¼ | 93½ | 95¼ | (plus) | 1⅜ |
| May 22 | 96 | 95 | 95½ | (plus) | ¼ |
| June 1 | 94¾ | 94¼ | 94¼ | (minus) | ½ |
| June 2 | 87⅛ | 85¼ | 85¼ | (plus) | ¾ |

The stipulation does not establish whether these prices included payment for the right to receive the interest,[1] but the figures indicate that the purchasers expected to receive the interest until June 2, when the price dropped by approximately the amount of the interest payment of $9.75 (9¾ per cent of face value). No such drop took place from May 19 to May 22. In fact, except for June 2, the greatest change on any of the days shown in the chart was 1⅝, and on only three days out the three months was the change as much as a whole point.

This substantial drop in the price on June 2 was explained by the testimony of Ted Bernstein, manager of defendant's Dallas office, who was qualified by training and experience to testify concerning operations on the exchange. He testified that since the TWA bonds were listed on the exchange, defendant was required to act under regulations of the exchange and of the National Association of Security Dealers, even though this particular sale was not made on the exchange. He said that over-the-counter sales, such as the transaction in question, are reflections of what happens on the floor of the exchange. Bernstein further testified that in the case of the TWA bonds, even though the record date established by TWA was May 19, market forces gave effect to the interest payment on June 2 because the interest was paid on June 1. On any sale after the record day and until the interest pay-

ment day, the broker was required to attach to the bonds when delivered a "due bill" showing that the interest, when received, would be paid over to the purchaser. Consequently, if defendant sold the bonds in question before June 2, it would have been required to give a due bill committing it to pay the interest when received to the purchaser, and if it did not sell the bonds before June 2, the purchase price received would have been adjusted downward by the amount of the interest payment.

Bernstein further testified that the first day on which plaintiffs could have sold the bonds and retained the right to receive the interest was June 2. If Kiser had sold on that date, he would have received a price of 85⅝ per bond, after deducting a commission of five dollars per bond, and would also have received the interest paid of 9¾ per cent, which made a total principal and interest of $90,606.25 on the ninety-five bonds. The evidence shows that the actual amount Kiser received for the sale on May 22 was $90,131.25, a difference of only $465 below the amount he would have received if he had waited until June 2 to sell his bonds. The corresponding difference for Fox would have been $420.95. These small differences, according to Bernstein, were the only amounts plaintiffs lost as a result of defendant's inaccurate advice that May 20 rather than June 2 was the first day on which they could sell their bonds and retain the right to receive the interest.

1. The chart contains an "X" accompanying the quotations for June 2, and there is testimony that this meant that June 2 was the first day on which the bonds were traded without the right to receive the interest to be paid on June 1, but plaintiffs insist that this "X" is not part of the stipulation.

He testified that he offered to pay these amounts, but that plaintiffs refused.

Plaintiffs argue that Bernstein's testimony is wholly speculative and is based on rules of the New York Stock Exchange and of the National Association of Security Dealers, which were not offered in evidence. We do not agree. Although the regulations of the exchange and of the association were not introduced, Bernstein testified definitely and positively concerning Hutton's practice under such regulations. The chart of quotations from the Wall Street Journal was stipulated to be correct with respect to values, and the only objection was to its relevancy. We find that this evidence was highly relevant and that it raises at least a fact issue as to whether the teletype message of May 18 was in error with respect to plaintiffs' right to retain the interest on sale of the bonds before June 2. If Bernstein's testimony is accepted, plaintiffs' only damages as a result of their reliance on the statements in the teletype message are the relatively small differences which defendant offered to pay, rather than the full amount of the interest paid by TWA.

Plaintiffs seem to recognize that the judgment cannot be sustained on the "reliance" theory adopted by the trial court, since they now argue that the evidence establishes a contract by which defendant agreed to pay them the market price for their bonds on May 22 and also to deliver to them the interest when received from TWA at a later date. Plaintiffs insist that they are entitled under this contract to recover the full interest payments. We cannot accept this argument because no such contract was pleaded by plaintiffs or found by the trial court. We need not determine whether the evidence would support such a finding if it had been made. To sustain the judgment on a contract theory not pleaded in the trial court would deprive defendant of its right to plead and prove defenses to such a contract, such as mutual mistake.

Since plaintiffs have failed to establish by pleadings, proof, and findings by the trial court the amount of their damages, if any, sustained in reliance on the alleged representation of defendant, the judgment is reversed. We cannot render judgment here, however, because, as above pointed out, essential matters of fact remain undetermined. Consequently, the case is remanded for new trial. Texas Rules of Civil Procedure, rule 434.

Reversed and remanded.

## ON MOTION FOR REHEARING

GUITTARD, Justice.

In their motion for rehearing plaintiffs contend that we should presume that the trial court made implied findings on omitted elements of his theories of contract and promissory estoppel under Tex.R.Civ.P. 299, which provides:

Where findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumption of finding upon any ground of recovery or defense, no element of which has been found by the trial court; but where one or more elements thereof have been found by the trial court, omitted unrequested elements, where supported by evidence, will be supplied by presumption in support of the judgment. Refusal of the court to make a finding requested shall be reviewable on appeal.

Plaintiffs also cite Pinson v. Dreymala, 320 S.W.2d 152, 155 (Tex.Civ.App.—Houston 1958, writ dism'd) for its holding that failure of an appellant to request additional findings effects a waiver of a ground of defense no element of which has been found.

Neither *Pinson* nor Rule 299 supports plaintiffs' contention. The theories of contract and promissory estoppel are not

defenses to this suit, but are grounds of recovery on which plaintiffs now seek to sustain the trial court's judgment, although the record fails to show that these grounds were presented in the trial court. Consequently, defendant's failure to request findings on these grounds cannot be considered as a waiver of any defense. If there is any waiver here, plaintiffs must be held to have waived any ground of recovery on which no element was found, and on which they requested no supplemental findings.

■ The main question raised in the motion for rehearing is whether the court has made findings of any elements of contract or promissory estoppel, so that "omitted unrequested elements" may be supported by presumption under the provisions of Rule 299. We conclude that no implied findings may be presumed in support of either ground of recovery.

In the first place, none of the court's recited findings of fact appears to establish any element of either of these grounds of recovery. We see no finding concerning any of the elements of a contract, and neither can we identify any finding as a distinctive element of promissory estoppel. All the findings of fact appear to relate to the "reliance" theory pleaded by plaintiffs and adopted by the trial court, as indicated by the court's conclusions of law.

■ In the second place, no additional finding can be presumed because, as the court's conclusions of law show, the judgment is expressly based on the findings recited. The rule that supplemental findings necessary to support the judgment are presumed has no application when the findings and conclusions disclose a different basis for the judgment. Burford v. Pounders, 145 Tex. 460, 199 S.W.2d 141, 145 (1947); Life & Casualty Ins. Co. v. Martinez, 299 S.W.2d 181, 182 (Tex.Civ. App.—San Antonio 1957, *per* Pope, J., no writ). In particular, the record excludes any presumption of an implied finding by the court that the amount awarded in the judgment was the amount which was necessary to put plaintiffs in the position they would have been in if they had not sold their bonds in reliance on such representation. The court found that plaintiffs were entitled to recover "their interest" in the amount of $9,262.50 for Kiser and $8,585 for Fox as a result of such reliance, and these were the amounts awarded in the judgment. According to the principle applied in the cases above cited, Rule 299 does not authorize us to imply a finding on the correct measure of damages when the record clearly shows that the amount awarded by the court was determined by applying an erroneous measure of damages.

■ In the third place, both of these grounds of recovery were waived by lack of pleadings. Neither a contract nor a promise as a basis for estoppel was pleaded by plaintiffs. The petition alleges only a representation by defendant and reliance by plaintiffs. Nothing in the record indicates that issues relating to either of these grounds of recovery were tried by implied consent. No implied findings can be presumed to support the judgment on a theory of recovery which was waived by lack of pleading.

■ Plaintiffs also contend that an affirmance, rather than a reversal, should follow from our holding that a fact issue exists as to whether the teletype message of May 18, 1972, was in error. They insist that defendant waived the defense of mistake by not requesting additional findings of fact. This argument misconceives the ground of our opinion. We were not concerned with the equitable defense of mistake, which might be available if the suit were based on contract. We pointed out that no contract was alleged by plaintiffs or found by the trial court. The "error" in the teletype message, if it was an error, was a matter which went to the evidentiary value of that message in determining whether plaintiffs sustained damages in reliance on defendant's representation. The amount of damages was not a defensive

matter, but was an essential element of plaintiffs' case.

Finally, plaintiffs object to our consideration of the testimony of defendant's manager Bernstein concerning defendant's practices under the rules of the New York Stock Exchange and the National Association of Security Dealers. Plaintiffs contend that they were not bound by any custom of security dealers because the contract between the parties was clear and complete, citing Republic Nat'l Bank v. National Bankers Life Ins. Co., 427 S.W.2d 76, 80 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.). This contention is without merit because no contract was pleaded or found by the trial court, and for reasons already stated, neither can the judgment be supported here by an implied finding of such a contract.

Motion overruled.