**J. W. McCLELLAN, Jr., et al.,**
**Appellants,**

v.

**SCARDELLO FORD, INC., Appellee.**

**No. 9295.**

Court of Civil Appeals of Texas,
Amarillo.

July 15, 1981.

Culton, Morgan, Britain & White, Richard L. Cazzell, Amarillo, for appellants.

John L. David, Dalhart, for appellee.

REYNOLDS, Chief Justice.

One who agreed to purchase a truck on delivery, but which was undelivered due to its destruction by fire, and his insurance carrier were adjudged liable to the seller for the purchase price of the truck. The adjudication of liability being without support in the record, we reverse and render.

J. W. McClellan, Jr. and Scardello Ford, Inc.[1] negotiated for McClellan's purchase of a truck meeting his specifications. McClel-lan was to pay Scardello $26,827 in cash when the truck, equipped as specified, was delivered in Dalhart, Texas. Scardello located at a dealership in Nashville, Tennessee, a truck which, with the addition of an air conditioner and the modification of the truck's frame, would meet McClellan's specifications. Scardello purchased the truck, took title to it and sent its occasional employee, Ray Reilli, to get it. Reilli was to drive the truck to Fort Worth, where Scardello had arranged for the air conditioner to be installed, then to Amarillo, where Scardello had arranged for the frame to be lengthened, and then to Dalhart, where the truck was to be delivered to McClellan.

Reilli's trip from Nashville to Fort Worth was interrupted by his illness lasting three or four days. When it occurred to Scardello that its trip insurance would expire before the truck arrived in Dalhart, its insurance agent was contacted. He suggested that, in lieu of a binder for a few days of insurance at Scardello's cost, the person who bought the truck should carry the coverage on it.

Acting on the suggestion, Scardello, without consulting McClellan, called the local office of Texas Farm Bureau Insurance Company,[2] McClellan's insurance carrier, requesting that the truck be insured on McClellan's present policy.[3] Farm Bureau informed Scardello that the truck could be added to McClellan's policy, that the truck was insured against fire and collision, and issued a binder of insurance coverage on the truck for McClellan. Later that evening, Scardello advised McClellan what had been done about the insurance, adding that it was standard procedure. McClellan said he replied, "Well, if it is standard procedure, all right." He added, according to Scardello, "[H]e just wanted to be sure he was covered."

1. For simplicity, the actions ascribed to Scardello Ford, Inc., a Texas corporation, which acted mainly through Dyke Rogers, its secretary and authorized agent, will be recorded as taken by Scardello.

2. Again for simplicity, the actions of Texas Farm Bureau Insurance Company's authorized agents will be recorded as taken by Farm Bureau.

3. Some two weeks prior to the truck negotiations, Scardello had sold McClellan a pickup and, at McClellan's request, called Farm Bureau to bind McClellan's insurance coverage on the pickup.

Two days later and after the air conditioner had been installed, Reilli was driving the truck some thirty miles west of Fort Worth on the way to Amarillo when the truck caught fire. The fire destroyed the truck.[4]

McClellan refused the request of Scardello to sign an instrument evidencing the truck was his, and he neither reported the loss to Farm Bureau nor made any claim for an insured loss. It is indicated that Scardello filed with Farm Bureau, and Farm Bureau rejected, Scardello's claim for the loss of the truck.

Scardello filed suit against McClellan and Farm Bureau. In its trial pleadings, Scardello alleged that McClellan had purchased the truck and had accepted the risk of loss by agreeing to maintain insurance coverage on it, but had refused to pay the $26,827 purchase price for the truck. Alternatively, Scardello alleged that Farm Bureau agreed to insure the truck, is estopped to deny coverage, and is obligated to pay the $26,-827 loss. McClellan and Farm Bureau answered, affirmatively denying Scardello's allegations.

The cause was submitted to the trial court on the depositions of McClellan and the agents of Scardello and Farm Bureau, aided by the briefs of the litigants. The court rendered judgment decreeing that Scardello recover $26,827 from McClellan and Farm Bureau.

At McClellan's and Farm Bureau's joint request, the court filed findings of fact and conclusions of law. The court's findings of fact, so far as they extend, are compatible with the factual recitation expressed above. The court's material conclusions of law are, in essence, that (1) McClellan agreed to purchase the truck; (2) McClellan accepted Scardello's placing the truck on his insurance policy and the risk of loss by not cancelling the binder; (3) there was privity of contract between Scardello and Farm

Bureau; and (4) Farm Bureau is estopped to deny coverage under the policy.

Appealing, McClellan and Farm Bureau have presented thirty points of error, the last of which has thirty-three subpoints. However, many of the points are not briefed in compliance with current Rule 418(d) and (e), Texas Rules of Civil Procedure and, thereby, are waived. *Frazier v. Wynn*, 492 S.W.2d 54, 61 (Tex.Civ.App.—Amarillo 1973, writ ref'd n. r. e.). Included among the points of error which we deem waived for lack of proper briefing are all those used in attempting to attack the court's findings of fact, as well as the court's failure to find additional facts, save the two points used to challenge the court's finding of $26,827 as the value of the truck, which properly are before us. Although all the court's findings, except the $26,827 value finding, and its failure to find are immune from the attempted attacks, we are not bound by incorrect conclusions of law drawn from the facts found. *Adams v. American Quarter Horse Ass'n*, 583 S.W.2d 828, 834 (Tex.Civ.App.—Amarillo 1979, writ ref'd n. r. e.).

Eliminating the points not properly before us, there remains for consideration McClellan's and Farm Bureau's points by which they complain of error in five respects. Their contentions may be expressed thusly: the court incorrectly concluded that McClellan accepted the risk of loss, there was privity of contract between Scardello and Farm Bureau, and Farm Bureau is estopped to deny insurance coverage on the truck; the court erred in rendering judgment on the theory of a breach of contract by either McClellan or Farm Bureau; and the court incorrectly found $26,827 to be the value of the destroyed truck.

Preliminary to any address of McClellan's and Farm Bureau's contentions, it is expedient to notice the responsive position taken by Scardello on appeal. Scardello proposes that "the ultimate issue on appeal is wheth-

---

4. Upon being informed the truck had been destroyed by fire, McClellan ordered another one to meet his specifications. Scardello secured a similar truck from the same dealership in Nashville, had it modified in the manner and at the places scheduled for the destroyed truck, and delivered it in Dalhart to McClellan, who paid $26,827 cash for it. Scardello provided its insurance coverage on this truck until it was delivered to McClellan.

er or not Scardello and Texas Farm Bureau entered into an enforceable contract whereby the latter agreed to insure the truck." On this premise, Scardello has limited its reply, undertaking to defend only its judgment against Farm Bureau. Scardello's position is that it and Farm Bureau entered into a direct contract, resulting in privity of contract and giving rise to an enforceable contract between them. Scardello's conclusion is that because Farm Bureau agreed to insure the truck, Scardello, "as bearer of the loss" of the destroyed truck, has the right to enforce the contractual obligation of Farm Bureau.

In connection with its premise and with commendable candor, Scardello concedes that McClellan did not accept the risk of loss on the truck. As a consequence, we sustain McClellan's and Farm Bureau's contention that the court erred in arriving at the contrary conclusion.

Moreover, given Scardello's premise and candid concession, we understand Scardello's admission that it was the bearer of the loss as an acknowledgment that McClellan has no liability under the contract they made. When the truck was destroyed, Scardello had title to and possession of it; and, within Scardello's admission is the recognition that, consistent with the evidence and the court's determinations, their agreement constituted a contract for sale with title to pass, by operation of law, upon delivery of the truck, equipped to McClellan's specifications, to him in Dalhart. Tex. Bus. & Com.Code Ann. § 2.106(a), § 2.401(b)(2) (Vernon 1968). Hence, until delivery was made pursuant to the contract for sale, McClellan was neither liable under the contract nor assumed the risk of loss. Tex.Bus. & Com.Code Ann. § 2.509(c) (Vernon 1968); *Caudle v. Sherrard Motor Company*, 525 S.W.2d 238, 241 (Tex.Civ.App.—Dallas 1975, writ ref'd n. r. e.). Resultantly, the judgment rendered against McClellan has no support in the record and cannot be affirmed.

Our consideration, then, is directed to the question of a contractual relationship between Scardello and Farm Bureau. The binder of insurance issued by Farm Bureau was not placed in evidence. Still, this threshold comment, albeit perhaps semantical, is pertinent: Farm Bureau's undertaking was not that it, in the words of Scardello, "agreed to insure the truck;" rather, Farm Bureau agreed, by the very nature of a binder of insurance, to protect McClellan from loss arising from damage to or destruction of the truck. *See McBroome-Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32, 36 (Tex.Civ.App.—Dallas 1974, writ ref'd n. r. e.).

The court drew no conclusion, contrary to Scardello's assertion, that Scardello and Farm Bureau had entered into a direct contract between them; nevertheless, the court did conclude that there was privity of contract between them. In its legal sense,

Privity of contract is that connection or relationship which exists between two or more *contracting* parties. It is essential to the maintenance of an action on any contract that there should subsist a privity between the plaintiff and defendant in respect of the matter sued on. [Emphasis supplied.]

Black's Law Dictionary (4th ed. 1968). In this regard, "privity" means "mutual or successive relationship to the same rights of property." *Id.* Traditionally, since *Jones v. George*, 61 Tex. 345 (1884), our courts have followed the general rule that "when a right or duty is created wholly by contract it can only be enforced between the contracting parties or their privies." *Id.* at 364. Thus, in the final analysis, for Farm Bureau to have the contractual liability to Scardello decreed by the court, Scardello must have been one of the contracting parties or in privy with McClellan. No such status can be afforded Scardello on this record.

Initially, the evidence is clear that Scardello, which was not a member of Farm Bureau's organization, was ineligible to be insured against a property loss by Farm Bureau, whose insurance coverage is available only to its members, one of whom was McClellan. Conformably, Scardello merely requested Farm Bureau to bind the truck

on McClellan's present policy, and it is undisputed that there was no request, much less an agreement, for Farm Bureau to issue the binder to Scardello. Beyond that and controlling, if not conclusive, is Scardello's judicial admission that its purpose in making the request of Farm Bureau was to obtain insurance coverage for McClellan, not for Scardello. Consequently, it is beyond dispute that Scardello was not one of the parties to the insurance contract between Farm Bureau and McClellan, and there is not, nor can there be, any contention by Scardello that it has, or succeeded to, the rights of McClellan under the insurance contract. Without any legal rights in the insurance contract, Scardello is in the position of a stranger to it.

The evidenced lack of privity of contract between Scardello and Farm Bureau remains unchanged by Scardello's claim that when it made the request of Farm Bureau, it asked for assurance that Scardello was covered because McClellan had not paid for the undelivered truck and Farm Bureau replied, "Don't worry about it. You are covered right now." The claim is not corroborated by other testimony and is uncredited in the court's findings of fact as a basis for the court's conclusion that privity of contract existed between Scardello and Farm Bureau. There being no finding on the claim, we may not presume one, for express findings made by the court cannot be extended by implication to cover other independent issuable facts. *Kimbell, Inc. v. Moreno*, 563 S.W.2d 350, 352 (Tex.Civ.App.—Amarillo 1978, no writ). Hence, absent a basis in the findings, the legal conclusion that there was privity of contract between Scardello and Farm Bureau is erroneous and without effect.[5] *City of Houston v. Bullard*, 354 S.W.2d 224, 228 (Tex.Civ.App.—Houston 1962, no writ); *Korkmas v. Ham*, 141 S.W.2d 433, 434 (Tex.Civ.App.—Dallas 1940, no writ), and cases there cited.

In this setting, the court's conclusion that Farm Bureau is estopped to deny coverage under the policy cannot benefit Scardello. Obvious from the factual findings is that the court referred to estoppel by contract, which simply means that a party is bound by the terms of his own subsisting contract. *United Fidelity Life Ins. Co. v. Fowler*, 38 S.W.2d 128, 131 (Tex.Civ.App.—Dallas 1931, writ dism'd). The only parties to the insurance contract were McClellan and Farm Bureau; therefore, the conclusion that Farm Bureau was estopped to deny coverage under the insurance policy would inure to the benefit of McClellan and not to Scardello, a stranger to the transaction. It is axiomatic that estoppel by contract operates only on parties to the transaction and their privies, *Buckner Orphans Home v. Berry*, 332 S.W.2d 771, 776 (Tex.Civ.App.—Dallas 1960, writ ref'd n. r. e.); and, being defensive in nature, estoppel does not create liability in favor of Scardello, a stranger to the contract, where none exists otherwise. *Southland Life Ins. Co. v. Vela*, 147 Tex. 478, 217 S.W.2d 660, 663 (1949).

It follows that the court's judgment of liability is without support in the record and it must be reversed with the rendition of a proper judgment. For this reason, our sustention of McClellan's and Farm Bureau's contention that the court incorrectly found $26,827 to be the value of the destroyed truck, which calls only for a reversal and remand, is noted with these limited comments: the $26,827 was the sale price of the truck modified to specification and delivered; there is no testimony bearing on the value of the truck, unmodified to specification for delivery, at the time it was destroyed.

Accordingly, the judgment is reversed and judgment is here rendered that Scardello Ford, Inc. take nothing by its contractual actions against J. W. McClellan, Jr. and Texas Farm Bureau Insurance Company. Tex.R.Civ.P. 434.

---

5. Parenthetically, we have noticed, even though the matter is not raised by pleadings or contention, that Scardello does not have the standing of either a donee or a creditor beneficiary of the performance of the insurance contract between McClellan and Farm Bureau so as to have a right of action thereon. *See Suthers v. Booker Hospital Dist.*, 543 S.W.2d 723, 727 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.).